FILED

JUN 2 5 2010

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  Gene J. Stonebarger, State Bar No. 209461
   STONEBARGER LAW
2  A Professional Corporation
   75 Iron Point Circle, Suite 145
3  Folsom, California 95630
   Telephone: (916) 235-7140
4  Facsimile: (916) 235-7141
   gstonebarger@stonebargerlaw.com
5

6
   James R. Patterson, State Bar No. 211102
7  Alisa A. Martin, State Bar No. 224037
   HARRISON PATTERSON & O'CONNOR LLP
8  402 West Broadway, 29th Floor
   San Diego, CA 92101
9  Telephone: (619) 756-6990
   Facsimile: (619) 756-6991
10 jpatterson@hpolaw.com
   amartin@hpolaw.com
11

12 *Attorneys for Plaintiff and the Class*

13

14                  **UNITED STATES DISTRICT COURT**

15               **SOUTHERN DISTRICT OF CALIFORNIA**

                        '10 CV 1 3 5 8 H          CAB
16
   PATRICK BERRY, on behalf of himself and all )  CASE NO.:
17 others similarly situated,                   )
                                                )  **CLASS ACTION COMPLAINT FOR:**
18                          Plaintiff,          )
                                                )  **1/  VIOL. OF ELEC. FUNDS TRANS. ACT**
19                vs.                           )  **2/  VIOL. OF ELEC. COMMUN. PRIV. ACT**
                                                )  **3/  CIVIL THEFT**
20 WEBLOYALTY.COM, INC., a Delaware             )  **4-5/ UNJUST ENRICHMENT**
   corporation; MOVIETICKETS.COM, INC., a       )  **6-7/ MONEY HAD AND RECEIVED**
21 Delaware corporation; DOES 1 through 50,     )  **8-9/ NEGLIGENT MISREPRESENTATIONS**
   inclusive,                                   )  **10-11/ FRAUD**
22                                              )  **12-13/ VIOL. OF CONSUMER LEGAL**
                            Defendants.         )  **REMEDIES ACT**
23                                              )  **14-15/ FALSE ADVERTISING**
                                                )  **16-17/ CONVERSION**
24                                              )  **18-19/ VIOL. OF UNFAIR BUSINESS PRAC.**
                                                )
25 _____ )  **[JURY TRIAL DEMANDED]**

26       Plaintiff Patrick Berry, on behalf of himself and all others similarly situated ("Plaintiff"),

27 alleges upon personal knowledge and upon information and belief as follows:

28 ///

ORIGINAL

# I.  NATURE OF THE ACTION

1.  This is a consumer class action brought against Defendants Webloyalty.com, Inc. ("Webloyalty") and MovieTickets.com, Inc. ("MovieTickets") who each profit from a scam that entails unilaterally subscribing consumers to a club membership program and then improperly charging monthly membership fees to the consumers' credit and debit card accounts without authorization. The scam is simple. While consumers are purchasing goods from certain online retail websites, including movie tickets online at MovieTickets.com, they are presented with advertisements that appear to offer next purchase coupons or some other similar discount or benefit. By clicking on that coupon, consumers unwittingly agree to join a club membership program operated by Webloyalty that costs around $10.00 to $12.00 per month. After consumers click on the coupon, the online retail website such as that operated by MovieTickets, automatically transfers their personal billing information, which includes their credit or debit card information to Webloyalty. Webloyalty then charges on consumers' credit or debit cards a monthly fee of around $10.00 to $12.00. These sales tactics, however, exploit consumers' expectations about the online "checkout" process. Consumers unwittingly join these membership programs without knowledge or consent, and do not learn about their membership until they see the unauthorized charges on their credit or debit card statements.

2.  To elaborate, Webloyalty gains access to online consumers by entering into financial agreements with seemingly reputable online websites and retailers, like MovieTickets (commonly referred to as "e-tailers" or "retail partners"). In exchange for "bounties" and other payments, e-tailers agree to let Webloyalty sell club memberships to consumers as they are in the process of purchasing movie tickets or other online goods and services. MovieTickets, as well as other e-tailers, allow Webloyalty to insert various sales offers into the post-transaction phase of an online purchase — after consumers have made a purchase but before they have completed the sale confirmation process. These offers promise cash back rewards and appear to be related to the purchase transaction the consumer is in the process of completing. Misleading buttons, such as "Yes" and "Continue", cause consumers to reasonably believe they are completing the original transaction with the e-tailer, rather than joining a membership club operated by

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    Webloyalty.

2        **3.** The key to Webloyalty selling high volumes of club memberships is through
3    "data pass." Data pass is when a third party company obtains a consumer's billing information
4    not directly from the consumer, but from the website where the consumer just made a purchase.
5    Webloyalty does not require consumers to enter their billing information a second time to
6    confirm acceptance of the new offer. Instead, MovieTickets will either pass the consumer's
7    credit or debit card information to Webloyalty after the consumer has provided "proof of
8    enrollment," such as an email address or the last few digits of a credit or debit card, or
9    MovieTickets will allow Webloyalty to intercept consumers' billing information. Either way,
10   data pass deprives consumers of notice that they are agreeing to enter a new, ongoing financial
11   relationship with Webloyalty.

12       **4.** Thousands of consumers have complained on various websites, to state attorneys
13   general, the Better Business Bureau, and other consumer advocates that the enrollment process is
14   misleading and deceptive. Consumers complained that they did not consent to sharing their
15   billing information with Webloyalty and that they only learned they had been enrolled in
16   Webloyalty's membership program after seeing strange charges on their credit card or checking
17   account statements. These complaints were so pervasive that Senator John D. Rockefeller IV,
18   Chairman of the U.S. Senate Committee on Commerce, Science, and Transportation launched an
19   investigation into these internet marketing practices, focusing on Webloyalty and two other
20   direct marketing companies, as well as hundreds of e-tailers, including MovieTickets. The
21   Senate issued two reports finding, among other things, that the data pass enrollment process was
22   deceptive and misleading, particularly since "Consumers rely on the process of providing a credit
23   card number as a barrier to unexpected charges."

24       **5.** Basically, Webloyalty, with the assistance of e-tailers, including MovieTickets,
25   subscribes consumers without their knowledge or consent in sham membership rewards
26   programs for which it charges members a small monthly fee. The membership programs
27   purportedly provide benefits such as discounts on merchandise, dining and tourist attractions. In
28   reality, the programs provide no meaningful benefits because the purported "benefits" never

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-3-

existed or because the unwitting subscribers never attempted to access the benefits. The programs are merely vehicles to access and charge unsuspecting consumers' credit and debit cards. Because this conduct results in Defendants reaping unearned financial gains to the consumers' detriment, Defendants are subject to contractual, tort and statutory liability as alleged herein.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because, on information and belief, the amount in controversy exceeds $5,000,000 exclusive of interests and costs and this is a class action in which the parties are citizens of different states. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1693m(g)(EFTA) and 18 U.S.C. §§2510, *et seq.* (ECPA). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action because this Court has personal jurisdiction over Defendants and a substantial amount of the events giving rise to the claim occurred in this District.

## III. THE PARTIES

### Plaintiff Berry

8. Plaintiff Patrick Berry is an individual who at all times mentioned herein resided, and continues to reside, in San Diego County, California. Plaintiff purchased movie tickets from MovieTickets.com's online store, had his billing information disclosed to Webloyalty without authorization, and suffered unauthorized charges to his debit card by Webloyalty.

### Defendant Webloyalty

9. Defendant Webloyalty.com, Inc. is a Delaware corporation with its principal executive offices located at 101 Merritt 7, 7th Floor, Norwalk, Connecticut 06851. According to the Connecticut Better Business Bureau, Webloyalty also maintains offices at 530 Lytton Ave Ste 300, Palo Alto, CA 94301-1541 and 595 Market St Ste 1300, San Francisco, CA 94105-2820. Webloyalty describes itself as the leading provider of online membership subscription

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-4-

1   programs, which purportedly provides easy access to dining, shopping, travel discounts and

2   additional travel protection benefits. Webloyalty claims to offer more than 60,000 dining

3   discounts, 25,000 shopping discounts and 10,000 attraction discounts throughout the U.S. and

4   Canada. Webloyalty also claims to provide savings and offers to consumers who have already

5   established relationships with an online commerce site through various membership programs,

6   including Reservation Rewards, Shoppers Discounts & Rewards, Travel Values Plus,

7   WalletShield, Buyer Assurance, and Complete Savings. Webloyalty also claims that its

8   members typically join the various membership programs by responding to a trial offer made as

9   they complete a purchase with one of Webloyalty's retail partners. Webloyalty further claims

10   that its purported members gain immediate access to all the program's benefits on a free 30-day

11   trial basis and for a monthly subscription fee thereafter. In reality, and explained in more detail

12   below, Webloyalty is in the business of collecting fees from consumers without their knowledge

13   or authorization.

14   **Defendant MovieTickets**

15       **10.**   Defendant MovieTickets.com, Inc. is a Delaware corporation with a principal

16   place of business located at 2255 Glades Road, Suite 232W, Boca Raton, FL 33431.

17   MovieTickets is an internet movie ticketing service that sells movie tickets to theaters and

18   cinemas across the nation. MovieTickets has significant minimum contacts with the Southern

19   District of California and all fifty states in the United States.

20   **Doe Defendants**

21       **11.**   Plaintiff is ignorant about the true names of Defendants sued as DOES 1 through

22   50, inclusive, and their wrongful conduct, and therefore sue these Defendants by fictitious

23   names. Plaintiff will seek Court leave to amend this complaint to allege their true names and

24   capacities when ascertained.

25       **12.**   Plaintiff alleges on information and belief that at all relevant times, DOES 1-50,

26   inclusive, were agents, servants, employees, representatives, partners, and related or affiliated

27   entities of Defendants, and in doing the things hereinafter mentioned, were acting in the course

28   and scope of their agency, employment, or retention with Defendants' permission, consent,

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    authority and ratification.

2    **Defendants' Aiding and Abetting**

3        13.    At all times relevant, Defendants aided and abetted, encouraged and rendered

4 substantial assistance to the each other in breaching their obligations to Plaintiff and the Class.

5 For example, MovieTickets aided and abetted and substantially assisted Webloyalty by, *inter*

6 *alia*, unlawfully transmitting Plaintiff's billing information and allowing Plaintiff's billing

7 information to be intercepted by Webloyalty at the point of sale without authorization. Similarly,

8 MovieTickets aided and abetted Webloyalty by offering illusory coupons on MovieTickets'

9 website at the point of sale, which led Plaintiff and the MovieTickets Subclass members to

10 interface with Webloyalty's webpage. Once Plaintiff and Class members were diverted to

11 Webloyalty's webpage, their Private Personal Information was unlawfully provided to and

12 intercepted by Webloyalty without authorization and their accounts were unlawfully charged. In

13 taking action, as particularized in greater detail herein, to aid and abet and substantially assist the

14 commissions of these wrongful acts and other wrongdoings complained of, Defendants mutually

15 acted with an awareness of the primary wrongdoing and realized that its conduct would

16 substantially assist the accomplishment of the wrongful conduct, wrongful goals and

17 wrongdoing.

18    **Defendants' Agency/Joint Venture Relationship**

19        14.    In addition to acting on their own behalf individually, Defendants, each of them,

20 are and were acting as the agent, servant, employee, joint venturer, and representative of, and

21 with the knowledge, consent and permission of, and in conspiracy with each other Defendant and

22 within the course, scope and authority of that agency, service, employment, representation, joint

23 venture, and conspiracy. Defendants' conduct was fully ratified by the other. Specifically, on

24 information and belief, Webloyalty partnered and contracted with MovieTickets explicitly to

25 create, implement and promote various membership programs, including the Shopper Discounts

26 & Rewards program. Thus, the actions, failures to act, breaches, conspiracy, and

27 misrepresentations alleged herein and attributed to one or more of the specific Defendants were

28 approved, ratified, and done with the cooperation and knowledge of each and all of the

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

Defendants.

**Defendants' Conspiracy**

**15.** Defendants knowingly entered into an agreement, combination and conspiracy to profit from unauthorized charges to Plaintiff's and the Class' debit and credit accounts under the guise that Plaintiff and the Class entered into the Shopper Discounts & Rewards program that purportedly provided various savings benefits. As alleged herein, Defendants agreed to jointly implement a system by which MovieTickets customers would be unwittingly enrolled in the Shopper Discounts & Rewards program. Throughout the relevant time period, Defendants were aware that consumers did not intend to enroll in any club membership programs, that the programs did not provide the promised coupons, savings, benefits, products or services, and that consumers never attempted to access the programs' purported benefits because they were not even aware of the programs' existence. Regardless, Defendants agreed to jointly promote this sham coupon offers. Pursuant to this conspiracy, Defendants, their agents, servants, and employees, acting both jointly and severally, committed or caused to be committed against Plaintiff a series of unlawful and fraudulent acts, namely: making, or causing to be made, unauthorized charges to Plaintiff and the Class' credit and debit cards. These acts were all made in furtherance of an agreement whereby Defendants knowingly conspired with each other to generate unlawful income at Plaintiff's and the Class' expense.

**IV.    FACTUAL BACKGROUND**

**Defendants' Deceptive Sales Practices**

**16.** Webloyalty and its online retail partners, including MovieTickets, create unauthorized membership accounts through a uniform scheme pursuant to which e-tailers permit Webloyalty to place advertisements on their internet websites that purport to offer next purchase coupons or discounts. These unsolicited advertisements appear on-screen immediately after consumers attempt to complete a legitimate online transaction by inputting their billing information into a "check out" purchase page but before they have completed and received confirmation of the transaction (referred to as "post-transaction marketing" or "post-transaction offers".) For instance, when customers purchase movie tickets or other merchandise on

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

CLASS ACTION COMPLAINT

MovieTickets' website, an advertisement appears on the consumer's computer screen that seemingly offers a complimentary coupon to save $10.00 on the next purchase. Consumers are directed to click on a button and enter their address to redeem it. When consumers enter their address as directed, they unknowingly agree to join Webloyalty's membership program and consent to Webloyalty obtaining their billing information from MovieTickets.

17. Through the data pass process, consumers' billing information — that was originally provided to MovieTickets for the purpose of purchasing movie tickets — is automatically transmitted to or intercepted by Webloyalty without permission, knowledge, or legal consent. Webloyalty then uses this billing information to enroll these consumers into Shopper Discounts & Rewards or some other club membership program for which Webloyalty collects monthly charges after the expiration of an alleged 30-day "free trial" basis. Thereafter, consumers are continuously billed $10.00 to $12.00 per month until they discover the charges and demand Webloyalty to cease the charges. When consumers are enrolled into Shopper Discounts & Rewards, the only reference to the monthly charges on their credit or debit card statement is "SHOPPER DISCOUNT 800-8898776 CT." Because the amount charged is so small because of the automatic billing structure employed by Webloyalty, many consumers, like Plaintiff, do not realize for months or years that they are being charged for unauthorized membership programs, like Shopper Discounts & Rewards.

18. Webloyalty gives its online retail partners, including MovieTickets, a bounty for each "subscriber" that is ensnarled by this deceptive business practice. This business model is extremely lucrative for Webloyalty and its online retail partners, including MovieTickets. Based on information and belief, MovieTickets received over $10 million in payments from Webloyalty. And Webloyalty, along with two other direct marketing companies that engage in the same scandalous business practices as Webloyalty, generated over $1.4 billion in revenue from Internet consumers who have been unwittingly enrolled in club membership programs, like Shopper Discounts & Rewards.

19. Defendants' marketing activities are intentionally and strategically designed to, and do, exploit consumers' well ingrained online shopping habits and widely shared assumptions

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1   about the usual steps involved in online shopping transactions. Defendants exploit consumer

2   behavior for their own nefarious ends. For instance, Webloyalty and MovieTickets intentionally

3   and knowingly refuse to require consumers to re-enter their credit or debit card information as a

4   condition of enrollment, because requiring the re-entry of credit or debit card information would

5   alert the consumer that they would be subject to monthly charges, thus preventing Defendants

6   from exploiting consumers through their deceptive acts. Indeed, a Harvard Business School

7   Professor, Benjamin Edelman stated the consumers rely on the request of billing information as

8   notice that they may incur financial obligations:

> Consumers rely on the process of providing a credit card number
> as a barrier to unexpected charges. Users rightly expect that by
> clicking from site to site, button to button, they do not incur
> financial obligation. This expectation is part of what makes the
> web fun, flexible, and low-risk: Users believe they cannot incur
> financial obligations except by typing their credit card numbers,
> and users expect to be able to cancel an unwanted transaction if a
> site requests a credit card number that a user does not care to
> provide.

14      **20.** MovieTickets is equally complicit in this scam and liable for the damages it

15   caused. With ready access to consumers' confidential billing information that was provided for

16   the limited purpose of purchasing movie tickets, MovieTickets deceptively and unlawfully

17   exploited this confidential information to generate additional revenue for itself by (1)

18   transmitting or allowing Webloyalty to intercept the information without consumers' knowledge,

19   consent or authorization, and (2) obtaining bounties from Webloyalty for membership accounts

20   generated through MovieTickets' website.

21      **21.** Webloyalty and MovieTickets agreed and jointly implemented and profited from

22   this scam. Webloyalty could not have gained access to MovieTickets consumers' billing

23   information without MovieTickets' participation. Plaintiff and Class members never gave

24   Webloyalty their billing information. Nor did Webloyalty ever ask for consumers' for their

25   billing information because it knew that reasonable consumers would not be interested in paying

26   to enroll in an illusory membership program that provides no meaningful benefits. In short,

27   Defendants use the intentionally deceptive data pass process to enroll consumers in club

28   membership programs as a means to fraudulently bill consumers' credit or debit card accounts

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    without their knowledge or consent.

2    **Plaintiff Berry's Experience with Shopper Discounts & Rewards:**

3    **22.** On or around May 26, 2009, Plaintiff Berry purchased movie tickets from

4 MovieTickets' website using his debit card. Plaintiff entered into this transaction in California.

5 Plaintiff recalls seeing an advertisement on MovieTickets' website to save $10.00 on his next

6 purchase. Plaintiff also recalls clicking "ok" and provided his email and street address, believing

7 that the information was necessary to complete his purchase transaction with MovieTickets and

8 to receive a complimentary savings coupon. Plaintiff never intended to and did not want to

9 become a member of Shopper Discounts & Rewards. In fact, Plaintiff did not even realize that

10 he had been redirected away from MovieTickets' website to Webloyalty's website due to the

11 deceptive nature of Shopper Discounts & Rewards marketing scheme.

12    **23.** A few months later, Plaintiff discovered unauthorized charges to his debit card by

13 Webloyalty via its Shopper Discounts & Rewards program. Webloyalty charged $10.00, on

14 three separate occasions, to his debit card. He also was surprised to discover the charges on his

15 card since he never intended to join the program or authorize MovieTickets to transfer any of his

16 information to Webloyalty.

17    **24.** Webloyalty and MovieTickets together engaged, and continue to engage, in a

18 systematic nationwide practice of making unauthorized charges to consumers' credit cards and

19 debit cards through the intentionally deceptive data pass enrollment process. Plaintiff never

20 intended to enroll in the Shopper Discounts & Rewards program or in any other program for that

21 matter. Rather, he was deceptively tricked into providing his address so that MovieTickets could

22 claim it had authorization to transmit (or allow Webloyalty to intercept) his debit card

23 information. Webloyalty then fraudulently charges his card without his knowledge or consent,

24 and provides bounties to MovieTickets for its participation, cooperation, and assistance with the

25 scam.

26    **Consumers Posted Numerous Complaints About Webloyalty's Membership programs**

27    **25.** Plaintiff's experiences with Defendants mirror those of thousands of other

28 consumers. In fact, the Internet is replete with consumer complaints about Webloyalty and its

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-10-

membership programs, which can be found on hundreds of Internet postings at consumer

protection websites and blogs such as www.ripoffreport.com, www.investorial.com,

www.complaints.com, www.consumerwebwatch.org, www.webbetrayal.com (a website

dedicated solely to confronting the Webloyalty business model), http://adam.rosi-

kessel.org/weblog/the_man/webloyalty_aka_wli_reservations_is_a_scam.html, and

www.complaintsboard.com:

> I've been monitoring my daughter's credit card statements since she left for college last Fall. In February 2008, I found a charge from "Shopper Discounts 800-8898776 CT" for $12 and didn't think much of it because I thought she had ordered something online. During subsequent three months, I noticed the same charge in every credit card statement but still neglected to ask my daughter about it. I finally asked her in May when she came home for the summer. She had no idea what they were. I contacted her credit card company and was told they couldn't remove the charges. So I called Shopper Discounts at 800-889-8776. Their representative told me that my daughter signed up for the service when she ordered sandwiches online from Campusfood.com. I asked them to cancel the membership and gave me full refunds which they did. The man on the phone didn't seem to be surprised at all. It was as though he had received a phone call like mine a million times before.

> This company keeps adding a $12 dollar charge to my CC bill after I have given them instructions to remove the charge. It was never authorized in the first place.

> My husband had asked me about a charge on our bank statement from Shopper Discounts. I didn't know anything about it. We called the 800 number and canceled our membership (which we had never signed up for). I had looked up this company and it goes by different names (Webloyalty, ReservationRewards, BuyersInsurance, Travelvaluesplus, Walletshield, and Completesavings). This is NOT a BBB accredited company. Apparently they make their money by pop-up windows that appear after making purchases online and they charge your debit card $12.00. Pretty much, they're stealing money from your bank account. If you see any pop-up windows using any of the names above, STAY AWAY! THEY ARE THIEVES!--

> Monthly fee showing up in the amount of $12 w/o my knowing consent. Posts by others on this subject suggest I should have read all the disclaimers and legal prose before responding to a pop-up. Maybe so. None-the-less, I know if the company asked for my cc information I would have backed away from saying yes to some 10% discount. I've come to understand that by clicking on the pop-up while conducting, for finishing up, on an on-line transaction my cc information is automatically routed to Shopper Discounts and,

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-11-

bam, I'm signed up.

I saw the recurring charge after three months and contacted Shopper Discounts. "No problem, we'll refund the full amount." they responded. Great. Still, I believe Shopper Discounts tactics are an underhanded way of hooking people -- put it in front of folks that they'll be billed -- over and over again. I guess, we all come to understand that companies will do anything for a buck while rationalizing how they are providing a service.

In June I purchased items from swimsutsforall.com. The charge appeared on my credit card on 6/15/09. In July I was hospitalized so my brother handled my bills for me. When my August credit card statement arrived I noticed a charge for $12 from 'SHOPPER DISCOUNTS". I knew that I had not purchased anything from this company. I could not figure out how they had gotten my credit card information. I looked up my July statement and found that there had been a $12 charge from "SHOPPER DISCOUNTS" in July as well as August.

I immediately called the 800 number that appeared on the credit card statement. They had an option on the menu for people who want to cancel unwanted subscriptions. This indicated to me that they have a large volume of callers who want to cancel their subscriptions.

I waited to talk to a customer service representative because I wanted to know how they got my credit card information. The woman I spoke with was not the least bit surprised that I had no idea what this repeated $12 charge was for. When I told her that I wanted the $24 refunded she did so without asking a question. This indicates to me that "SHOPPERS DISCOUNTS" is aware that customers are being tricked into signing up for their program. When I inquired how they got my credit card number I was told that at the time I purchased the items from www.swimsuitsforall.com I was asked if I would like a coupon for $10 off of my next purchase. When I checked "yes" my credit card information was automatically sent to "shoppers discounts". This is an outrageous practice.

I am very careful about giving out my credit card information yet I was duped into signing up for this fraudulent discount. Thankfully, I go over my credit card statements to make sure all charges are legitimate so I caught the fraudulent charges. I know that there are many people who never check their statements because their bills are paid automatically. I called my friend to warn her about this scam because I know that she shops online and doesn't always check her statements. I urged her to go over her credit card statements and sure enough, she had several charges from "Shoppers Discounts".

SHOPPER DISCOUNTS is charging unauthorized monthly fees $12.00 to our credit card, in spite of cancelled services. Anyway, I don't know what is the SHOPPER DISCOUNTS is. I never

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-12-

CLASS ACTION COMPLAINT

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

enrolled the service nor authorized ! Please refund the fees charged to my credit card.

This is scam.

26.     These complaints evidence the uniform nature and application of Defendants' deceptive business practices, as they each contain the same common theme of consumers who were unwittingly enrolled in Shopper Discounts & Rewards or other similar membership programs and then at some later time discovered monthly charges on their credit or debit statement with no disclosure as to the origin of those charges.

<u>**United States Senate Committee is Investigating**</u>
<u>**Webloyalty and MovieTickets' Business Practices**</u>

27.     Because consumer complaints have been so pervasive, in May 2009, Senator John D. Rockefeller IV, Chairman of the U.S. Senate Committee on Commerce, Science, and Transportation launched an investigation into e-commerce marketing practices that generate thousands of monthly charges to consumer credit and debit cards.  The investigation focused on three Connecticut-based direct marketing companies, as well as hundreds of online websites and retailers that partner with the companies.  Webloyalty was one of the marketing companies being investigated, and MovieTickets was one of the e-tailers being investigated.

28.     Like the practices complained of here, the Senate Committee is investigating business practices involving the sale of unfamiliar membership programs to consumers who are in the process of purchasing familiar products from trusted websites.  The Office of Oversight and Investigations, Majority Staff, released a preliminary report on November 16, 2009 ("Preliminary Report") after reviewing 300,000 pages of documents, including approximately 104,000 pages from Webloyalty, and interviewing numerous witnesses and experts in e-commerce marketing.  Although the investigation is not yet complete, the Senate Committee is still investigating this matter and it has made some key findings: (1) using aggressive sales tactics to enroll consumers in unwanted membership clubs is a billion-dollar business; (2) hundreds of well-known websites and online retailers have earned hundreds of millions of dollars employing aggressive online sales tactics; (3) companies have knowingly charged

millions of consumers for services the consumers do not use and are unaware they have purchased; (4) companies' customer service centers are almost entirely dedicated to handling a large volume of calls from angry and confused consumers requesting cancellations; and (5) e-commerce companies know that their customers are being harmed by these aggressive sale tactics.

29. The Senate also found that Webloyalty used "highly aggressive sales tactics to charge millions of American consumers for services the consumers do not want and do not understand they have purchased." As described in a Preliminary Report:

> These tactics involve selling unfamiliar membership programs to consumers who are in the process of purchasing familiar products offered by trusted websites.... [C]ompanies gain access to online consumers by entering into financial agreements with reputable online websites and retailers. In exchange for "bounties" and other payments, reputable on-line retailers agree to let [the companies] sell club memberships to consumers as they are in the process of buying movie tickets, plane tickets, or other online goods and services. The sales tactics used by these [companies] exploit consumers' expectations about the online 'checkout' process.

> With the cooperation of their online 'partners,' [companies] insert their sales offers into the 'post-transaction' phase of an online purchase, after consumers have made a purchase but before they have completed the sale confirmation process. These offers generally promise cash back rewards and appear to be related to the transaction the consumer is in the process of completing. Misleading 'Yes' and 'Continue' buttons cause consumers to reasonably think they are completing the original transaction, rather than entering into a new, ongoing financial relationship with a membership club operated by [an unrelated third party].

> Even more misleading and confusing is the 'data pass' process [these companies] and their partners use to automatically transfer consumers' credit or debit card information from the familiar web seller to the third-party membership club. Passing consumers' billing information directly to the [third-party membership club], without requiring consumers to re-enter it, deprives consumers of notice that they are entering a new, ongoing financial relationship with an unfamiliar company. After a 30-day 'free trial' period, [the companies] begin charging the consumer a monthly fee of $10-$20 dollars until the consumer cancels the membership. (Preliminary Report at i-ii.)

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

**Consumers Have Complained Directly to Webloyalty and MovieTickets About Their
Deceptive Business Practices**

30.     Webloyalty and MovieTickets cannot feign ignorance about the deceptive tactics of their business practices. As indicated in the Preliminary Report, they both have received complaints directly from consumers. For instance, in April 2007, a frustrated consumer from Los Angeles, California, named Chris Steffen wrote the following complaint to Movietickets.com.

> I'm not sure how or when this happened and I'm sure part of it is oversight or my own fault. But somehow through the purchasing of movie tickets through your site I was signed up for Reservation Rewards and charged 10 dollars a month membership for multiple months. This means that when I ordered tickets through your service, the cost to me was not only the price of the tickets, but the inadvertent cost of being enrolled in a service plan I was not aware of.

31.     Mr. Steffen also wrote a complaint to Webloyalty, addressed to Joni, an operator of the Reservation Rewards club:

> Imagine yourself, Joni, getting on a computer to book movie tickets for the next big show and you're in a hurry because you and your friends decided to go at the last minute. You want to make sure you order your seats in time so you can go have dinner before the show. Then, at first glance you get what looks like a coupon for 10 bucks off your next purchase of tickets. You don't read the fine print because you're in a hurry and next thing you know you're signed up for some worthless service.

**Webloyalty and MovieTickets Recognize
the Significant Financial Advantages of Data Pass**

32.     Webloyalty and MovieTickets are well aware that automatically transferring consumers' billing information upon proof of enrollment, like an email address, produces higher rates of "joins" than an enrollment process that requires consumers to re-enter their credit or debit card information to accept membership club offer. As indicated in the Preliminary Report, a Webloyalty chart tracked the average conversion rates in 2006 and 2007 for consumers who joined membership clubs through data pass (referred to as "card on file") versus those who joined by entering their credit card information ("non-card on file"):

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

|  | "Card on File" Net Conversion Rate | "Non-Card on File" Net Conversion Rate |
|---|---|---|
| **Q3 2006** | 4.51% | 1.26% |
| **Q4 2006** | 4.54% | 0.91% |
| **Q1 2007** | 4.04% | 0.68% |
| **Q2 2007** | 3.84% | 0.89% |
| **Q3 2007** | 4.04% | 0.94% |
| **Q4 2007** | 3.91% | 1.65% |

33.     Based on those figures, consumers are about four times more likely to join Webloyalty's membership clubs, like Shopper Discounts & Rewards, if their credit card data is transferred automatically from the retailer, like MovieTickets.   As further indicated in the Preliminary Report, Webloyalty presented the following graphic to a potential partner to explain how data pass ("card on file") leads to higher revenue for itself and its partners:



STONEBARGER LAW, APC
75 Iron Point Circle.
Suite 145
Folsom, CA 95630

/ / /

/ / /

34. And in another presentation, Webloyalty bluntly stated that requiring the consumer to re-enter credit card information would hurt conversion and noted that "with data collection on the page [y]ou can expect at least 70% decrease in conversion."

**Consumers Are Unaware That**
**They Were Enrolled in a Membership Program**

35. Webloyalty knows that consumers who enrolled in its membership programs did so unknowingly and inadvertently. As indicated in the Preliminary Report, most members cancel their memberships once they discover the monthly charges to their credit or debit cards and a very large percentage of members never access or use the purported membership benefits. Webloyalty's own internal data shows that it has known for years that most members were unknowingly enrolled in the membership clubs it offered. For instance, yearly "Disposition Reports" between 2003 and 2008 appears to show that the majority of members who cancelled their memberships indicated "Did Not Authorize/Was Not Aware" as their reason for cancellation. Further, in 2008, a Webloyalty call center employee acknowledged in an internal email that "[a]t least 90% of our members don't know anything about the membership." Additionally, customers surveys commissioned by Webloyalty and its e-commerce partners further confirm that most of Webloyalty's members were unaware they had enrolled in the company's membership clubs. For instance, a 2004 telephone poll involving 308 past and current members of Webloyalty's Reservation Rewards program revealed that 234 of these members (76%) either did not recall being offered a membership or said they had decline a membership offer and that only 4 of the members (1.3%) said they had used Reservation Rewards discounts.

36. When consumers realize they are being charged for a club membership they did not intend to enroll in and do not use, they often contact Webloyalty to dispute the charges. As indicated in the Preliminary Report, on February 16, 2009, a Webloyalty employee acknowledged in an internal email that the call center representatives spend most of their time answering calls "from members who are questioning charges or want to cancel their membership."

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

37. Very few consumers receive or use the purported "benefits" of Webloyalty's membership programs. In fact, a February 28, 2005 Webloyalty document titled, "Product Usage Statistics," appeared to show that the rate of benefit usage for members enrolled through the data pass process ranged between .2% and 11.4% for a six month period between 2004 and 2005. A "Site Usage" table presented to the Webloyalty Board of Directors in March 2006 reported that between 70% and 80% of Reservation Rewards club "members" enrolled through data pass had either never visited the Reservation Rewards site at all or viewed only the club's home page without ever accessing additional pages.

38. Indeed, as indicated in the Preliminary Report, Professor Benjamin Edelman analyzes publicly available web traffic data to reach a similar conclusion, noting that while Webloyalty claims to have more than two million paying club members, none of the company's club web pages rank among the Internet's top 100,000 sites for web traffic and concluding that this gap between signups and users confirms that Webloyalty's marketing failed to obtain meaningful consent from the users who purportedly "accepted" Webloyalty's offer. In short, Webloyalty and MovieTickets' enrollment process via data pass is deceptive and misleading.

## Webloyalty's Response to the Ongoing Investigation

39. In response to the Committee's preliminary investigation and findings, Webloyalty informed the Committee that as of August 1, 2009, Webloyalty's enrollment pages require consumers to re-enter the last four digits of their credit card or debit card before they are enrolled into any membership program using data pass. *See* Preliminary Report at 3. Webloyalty assured the Committee that this change would eliminate consumer confusion.

40. Yet experts that testified at the Committee's November 17 hearing explained that the new four-digit requirement did not eliminate any consumer confusion or fix the problems with Webloyalty's deceptive marketing practices. For instance, Florencia Marotta-Wurgler, a New York University School of Law professor intentionally enrolled in a Webloyalty program through a retail website operated by Fandango. She testified that consumers associate giving the last four digits of a credit card number as a way of verifying one's identity, not as a way of paying for a separate transaction with a wholly different company: "[I]nserting the last four

1  digits of my credit card didn't require any extra effort. It didn't require that much more attention

2  because I thought that Fandango was the one offering me my $10 for being a loyal customer and

3  that they were just trying to see that I was the person who I was claiming to be." And Prentiss

4  Cox, a law professor and former Assistant Attorney General for Minnesota added: "the collection

5  of four digits of a 16 digit account number...is highly unlikely to eliminate the problems."

6      **41.** Several weeks after the Committee's November 17 hearing, Webloyalty sent a

7  letter to Chairman Rockefeller informing him that it would begin requiring online consumers to

8  enter their full sixteen-digit credit card or debit card numbers.

9      **The Committee's Findings on Aggressive Post-Transaction Sales Practices**

10      **42.** On May 19, 2010, the Oversight and Investigations, Majority Staff, released a

11  Supplemental Report on aggressive sales tactics on the internet ("Supplemental Report"). The

12  Supplemental Report provides detailed information about what happened to consumers after they

13  were "enrolled" in membership clubs, including those operated by Webloyalty and

14  MovieTickets, and details the numerous barriers Webloyalty imposed on consumers who tried to

15  cancel their memberships and receive refunds in order to refund as little money as possible.

16  Indeed, the Committee found that the goal of these clubs was not to provide services, but to

17  charge consumers' credit cards for as many months as possible before consumers discovered

18  their memberships and canceled them.

19      **43.** For example, at the Committee's November 17 hearing, Linda Lindquist, a

20  consumer from Sussex, Wisconsin, testified that in July 2007, she had unknowingly enrolled in

21  two separate Webloyalty membership clubs while purchasing movie tickets for herself and her

22  daughter on the Movietickets.com website. She did not discover these charges on her credit card

23  statement until October 2008. Ms. Lindquist testified:

24          I did not know what these charges were for but I told my husband
that I would look into it. I first called the 800 number that was

25          listed on the credit card statement. I spoke with a customer service
representative who told me that I had signed up for Reservation

26          Rewards and Shoppers Discounts online after a movie ticket
purchase on Movietickets.com.

27

28  ///

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

> I told the representative that I had not knowingly signed up for this service and asked how they had gotten my credit card number. She stated that Movietickets.com gave them my credit card number. I then asked what service, exactly, I was paying for. She stated that they offer coupons and discounts for restaurants and hotels. I told the representative that I had never gotten any correspondence, either online or via mail regarding my so-called membership.

> I then asked her to cancel my membership and also to tell me how much money I had paid to date. She replied that I had paid $320.00. I was shocked! I asked if she could refund my money since I had no idea that I had even subscribed to this service. She stated that she would cancel my membership and could credit me the last month's payment of $20.00.

44.     The Committee found that Webloyalty's business model is to improperly charge consumers' credit cards for services it knew consumers did not intend to purchase and were not using, and then refund as small a portion of this money as possible after consumers discovered the charges. The less money Webloyalty refunded, the more profits it earned.

### Webloyalty Refunds As Little Money As Possible Through its Refund Mitigation Policies and Procedures

45.     As indicated in the Supplemental Report, Webloyalty created scripts and polices in order to minimize the amount of money they would have to refund to consumers who discovered that they were duped into enrolling in a membership club.

46.     Webloyalty trained its call center representatives to direct customers to a stop bill outcome, in which the consumer is offered a prompt cancellation without refunds. A Webloyalty stop bill script instructed call representatives to use the following language:

> Rep: I show that your last charge took place on <date> and effective immediately I have stopped all future billings so you will no longer be charged. You can continue to access the site and use your <service> benefits through the current month's term, which ends on <end of term date>. I will be sending you an email with a reference number to confirm this cancellation and that you will no longer be billed. Can you please confirm your <read domain out loud>

47.     Webloyalty's protocols required representatives to offer the stop bill script to all consumers, even those who called and immediately requested refunds. Representatives who mentioned refunds before attempting a stop bill resolution were given poor evaluations by their supervisors. One representative who was given the lowest possible score of "0" on a call by his

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-20-

1  supervisor was told:

2      What you did on that call was start to use the stop bill script and
3      then decide on your own not to use it and just give the member the
       money back.

4      **48.**    After receiving an e-mail encouraging representatives to listen carefully to their

5  customers, a Webloyalty representative replied:

6       Unfortunately if I listen too well I get a zero for not using the stop
        bill script. I have been told we need to ignore what they say and
7       use the stop bill script.

8      **49.**    When consumers refuse to accept Webloyalty's offer to simply cancel the

9  membership with no refund, the call center representatives are instructed to enter a "escalation"

10  process in which the representatives individually negotiate refunds.  The goal of this process is to

11  refund as little money as possible.  Webloyalty representatives are instructed to first offer a one-

12  month refund and then a two-month refund.    If the consumer insist on a refund going back

13  further than two months, Webloyalty requires the consumers to fill out and send an affidavit to

14  the company.  In a document it provided to call center representatives, Webloyalty explains that

15  this procedure should be strictly followed. The document states:

16      It is important that you are not offering the affidavit as a means to
        end a difficult call. You must follow the scripts, offering the
17      member one, then two refunds with a <u>pause</u> before you offer to
        send them the affidavit.
18
19      <u>Example</u>

20      **Member:**    I have these charges on my statement, I don't know
                   what they are so I want to cancel and I want my
21                 money back.

22      **Rep:**       Script A—Stop Bill

23      **Member:**    What about my money

24      **Rep:**       Script B—one month

25      **Member:**    that's nice, but I want it all

26      **Rep:**       Script C—top only with a pause

27      **Member:**    Thanks for the two months, but I see 5 other
                   charges that I want back.

28      **Rep:**       Affidavit process.

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

50. The only exceptions to these instructions were "Death of a Member or Child Join." The refresher explained that "these are the only circumstances that a full refund is to be processed, you do not need to go through the one refund, two refund, you can go immediately to full refund, no affidavit, action sheet."

51. During this negotiation process, representatives are instructed not to offer information to consumers about specific charges or how long Webloyalty had been charging their accounts, unless consumers directly request the information. Even though Webloyalty could have quickly issued complete refunds, it requires written requests for larger refunds because it knows a substantial portion of consumers would neglect to submit the paperwork. Indeed, Webloyalty conducted a 2008 survey of cancelled memberships and found that fewer than half of the consumers who had been sent "Additional Refund Request" forms had returned the forms.

52. The Committee further found that Webloyalty instructed its call center representatives not to issue refunds unless consumers mentioned certain key works like "attorney general," "Better Business Bureau," or "bank representative." This policy is designed to satisfy those consumers who were most likely to create additional "customer noise" and reputational damage. Consumers who did not mention the magic words did not receive full refunds.

53. Because Webloyalty's aggressive sales tactics and misleading offers are available on hundreds of websites, online consumers often inadvertently enroll in multiple membership clubs with the same or overlapping services. The Committee found that the fact that consumers enrolled in the same membership club, or similar membership clubs, offered by the same company shows that consumers are unaware they are enrolling in these clubs. For example, Ms. Lindquist testified before the Committee that through multiple transactions on Movietickets.com, Webloyalty had deceptively enrolled her in two separate membership clubs, "Reservation Rewards" and "Shoppers Discounts." According to Mrs. Lindquist, each of these clubs charged her $10.00 a month until she discovered the charges on her credit card bill more than a year later.

54. The Committee further found that Webloyalty trained its agents not to inform consumers about these additional memberships, except under very specific circumstances. For

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

instance, a Webloyalty employee stated the following when explaining the company's policy on multiple memberships in an e-mail in July 2005:

> One thing I noticed in Mark's sales presentation that he thought I should make clear to the whole team -- cancel policy on multiple memberships. He thought we would make consumers aware of any 2nd membership they held. I told him, we ONLY do this for 2nd memberships they purchased from the same client. So if I have a RR [Reservation Rewards] and TVP [Travel Values Plus] from the same client, when I cancel RR, I'm told about TVP. But, if TVP was from a 2nd client, I wouldn't be told this.

**55.** In 2008, Webloyalty's multiple membership policy reiterated this point:

> If the customer has multiple memberships that were joined through different clients then the only time you mention the additional membership(s) is if:

- The customer states they never want to hear from us again

- They are going to report us to the BBB, AG etc.

- They are going to contact their bank

- Call takes on a tone that could potentially be escalation/exception

> Then you must advise the member of the additional membership(s).

**56.** Two Webloyalty employees discussed the multiple membership policy when a training coordinator asked, "so just to clarify if they see a second membership and it's not joined through the same client and doesn't fall into the escalation/exception category then they are not to mention the second membership...and if they do, they will lose points?" Her colleague responded by stating, "Exactly!"; "Do I agree with that thought process – No – but it is what it is!"; and "Feels sneaky to me – especially in this economy.....$10.00 is $10.00 etc..."

### Webloyalty Failed to Follow Rules
### Governing Credit and Debit Card Transactions

**57.** Webloyalty violated MasterCard and Visa's rules for credit card and debit card transactions and American Express placed Webloyalty in monitoring programs for merchants with high rates of disputed charges from cardholders, known as "chargebacks."

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

58.    According to the Supplemental Report, as early as 2002, Webloyalty evaluated "chargeback action steps" that would encourage consumers to call Webloyalty directly for cancellations and refunds, rather than call their banks. Webloyalty surveyed approximately 200 consumers who had executed chargebacks.  The consumers said they had called their banks because they did not recognize Webloyalty's charges on their bill and did not recall joining Webloyalty's membership clubs.  When Webloyalty asked these consumers what it could have done so that consumers would not have contacted their provider, 28% of the consumers responded "not have billed me: this is a scam/not clear how they got my billing information."

59.    In short, Webloyalty's business model is to improperly charge consumers' credit cards for services it knew consumers did not intend to purchase and were not using, and then refund as small a portion of this money as possible after consumers discovered the charges. Webloyalty and its partners, including MovieTickets, are knowingly and intentionally creating consumer confusion with its membership programs and perpetrating a scam.

## V.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.    **The Class**:  This lawsuit is brought on behalf of an ascertainable nationwide Class consisting of all persons residing in the United States who, between October 1, 2008 and the date of Class Notice, (1) did not provide their credit card, debit card, or billing information directly to Webloyalty, and (2) had their credit or debit card charged by Webloyalty for a Shopper Discounts & Rewards membership, or any other club membership program maintained by Webloyalty, including Reservation Rewards, Travel Values Plus, WalletShield, Buyer Assurance, and Complete Savings (herein referred to as the "Class").

61.    **Subclass A:**  All Class members who had their debit card charged by Webloyalty for a Shopper Discounts & Rewards membership, or any other club membership program maintained by Webloyalty, including Reservation Rewards, Travel Values Plus, WalletShield, Buyer Assurance, and Complete Savings ("Debit Card Subclass").

62.    **Subclass B:**  All Class members who reside in the State of California ("California Subclass").

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

63. **Subclass C:** All Class members who purchased or who were purchasing merchandise from MovieTickets when their credit or debit card was obtained by Webloyalty ("MovieTickets Subclass").

64. **Subclass D:** All Subclass C members who reside in the State of California ("MovieTickets California Subclass").

65. **Excluded from Class and Subclasses:** Excluded from the Class and Subclasses are Defendants, their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and the attorneys for Plaintiff herein. Also excluded from the Class and Subclasses are any judges presiding over these proceedings and their immediate family.

66. **Numerosity:** The members of the Class and Subclasses are so numerous that joinder of all members is impracticable. While the exact numbers of Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that the Class and each Subclasses consists of hundreds, if not thousands of individuals. Class members are readily ascertainable through appropriate discovery from records maintained by Defendants and their agents.

67. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions. No difficulty will be encountered in this case's management to preclude maintenance as a class action.

68. **Common Questions of Law and Fact Predominate:** The questions of law and fact common to the Class predominate over questions affecting only individuals. Among the questions of law and fact common to the Class are:

    a.   whether Class members were automatically joined in club membership programs;

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

b.   whether Class members' billing information was improperly transferred to Webloyalty;

c.   whether Webloyalty intercepted Class members' billing information;

d.   whether Webloyalty unlawfully charged Plaintiff and Class members' credit or debit cards;

e.   whether Defendants engaged in unfair or unlawful business practices;

f.   whether Defendants engaged in false advertising;

g.   whether Defendants made intentional or negligent misrepresentations;

h.   whether Defendants breached the implied covenant of good faith and fair dealing;

i.   whether Defendants' contracts, agreements, or policies contained unconscionable terms;

j.   whether Defendants violated the Electronic Funds Transfer Act;

k.   whether Defendants violated the Electronic Communications Privacy Act;

l.   whether Plaintiff and the Class are entitled to injunctive relief; and

m.   whether Plaintiff and the Class sustained damages and, if so, the proper measure of those damages.

69.   **Typicality**: Plaintiff's claims are typical of other Class members' claims because Plaintiff, like every other Class member, was exposed to virtually identical conduct.

70.   **Adequacy**:  Plaintiff can fairly and adequately represent the Class' interests; Plaintiff has no conflicts of interest with other Class members, and has retained counsel competent and experienced in class action and complex civil litigation.

### FIRST CLAIM
**For Violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*
Brought by Plaintiff and the Debit Card Subclass
Against Webloyalty**

71.   Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

-26-

72. The Electronic Funds Transfer Act ("EFTA") provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693. The primary objective of the EFTA "is the provision of individual consumer rights." *Id.*

73. Plaintiff and the Debit Card Subclass each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

74. Webloyalty engaged in "unauthorized electronic funds transfers," as that term is defined in 15 U.S.C. § 1693a(11), by debiting the bank accounts of Plaintiff and the Subclass without their permission.

75. The EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). "In case of preauthorized transfers from a consumer's account to the same person which may vary in amount…the designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with the regulations of the Board, of the amount to be transferred and the scheduled date of the transfer." 15 U.S.C. § 1693e(b).

76. The EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq.,* provide: "Preauthorization electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.1(d). According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's requirement that electronic fund transfers "be authorized by the consumer 'only in writing' cannot be met by a payee's signing a written authorization on the consumer's behalf with only an oral authorization from the consumer." Regulation E, Supp. I, Part 10(b), ¶ 3. When "a third-party payee fails to obtain the authorization in writing or fails to give a copy to the consumer…it is the third-party payee that is in violation of the regulation." *Id.* at ¶ 2.

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

77. Webloyalty violated the EFTA because Webloyalty initiated electronic fund transfers from Plaintiff's account, as well as the Debit Card Subclass' accounts, without obtaining prior written authorization. Further, Webloyalty did not provide Plaintiff or the Debit Card Subclass with copies of their authorizations or provide reasonable advance notice of the amount to be transferred and the scheduled date of the transfer.

78. Accordingly, under 15 U.S.C. § 1693m, Plaintiff and the Debit Card Subclass seek damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the Court deems appropriate.

## SECOND CLAIM
### For Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510
### Brought by Plaintiff and the Class
### Against Webloyalty

79. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

80. The Electronic Communications Privacy Act ("ECPA") seeks to protect individuals from interception and monitoring of their electronic communications. The ECPA provides that liability may be imposed on any individual who "intentionally intercepts, endeavors to intercept, or procures any person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1) (a).

81. The transmission of data between Plaintiff's and the Class members' computers and various internet websites constitutes "electronic communications" within the meaning of 18 U.S.C. § 2510.

82. Webloyalty operates various club membership programs, including Shopper Discounts & Rewards, and the wrongful conduct alleged herein intentionally intercepted these electronic communications without Plaintiff's knowledge, consent or authorization. Specifically, Plaintiff and the Class transmitted data from their computers to e-tailers, including MovieTickets, for the purpose of purchasing products from the e-tailer's website only. While Plaintiff and the Class were in the process of transmitting this information, Webloyalty intercepted Plaintiff's and Class members' data without Plaintiff's knowledge or consent.

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1  Webloyalty was not a party to any communications between Plaintiff and the Class on one hand,

2  and the respective e-tailer on the other, and thus should not have received any data sent by

3  Plaintiff to the e-tailer.

4      **83.**    As described herein, Webloyalty received Plaintiff's and the Class' information

5  for the purpose of committing a wrongful and unlawful act — to make and profit from

6  unauthorized charges to Plaintiff's and the Class' credit or debit accounts.

7      **84.**    Under 18 U.S.C. § 2520, Plaintiff and the Class are entitled to preliminary,

8  equitable and declaratory relief, in addition to statutory damages of the greater of $40,000 or

9  $100 per day for each day of violation, actual and punitive damages, reasonable attorneys' fees,

10  and Webloyalty's profits obtained from the above described violations.

**THIRD CLAIM**
**For Civil Theft – Treble Damages**
**Brought by Plaintiff and the Class**
**Against Webloyalty**

14      **85.**    Plaintiff refers to and incorporates by reference the above paragraphs as though

15  set forth fully herein.

16      **86.**    Pursuant to Connecticut General Statutes §52-564, which provides that: "Any

17  person who steals any property of another, or knowingly receives and conceals stolen property,

18  shall pay the owner treble his damages."

19      **87.**    Pursuant to Connecticut General Statutes §53a-119(2): "Any person who obtains

20  property by false pretenses when, by any false token, pretense, or device, he obtains from

21  another any property, with intent to defraud him or any other person."

22      **88.**    Webloyalty explicitly or implicitly made false representations and statement of

23  existing facts by being silent and omitting to disclose to Plaintiff and the Class the following

24  material fact, which Webloyalty made with the intent to deceive Plaintiff and the Class: (a) that,

25  by clicking on an advertisement designed by Webloyalty while completing a transaction with

26  MovieTickets and other e-tailers, Plaintiff's and the Class' billing information would be

27  automatically transmitted by MovieTickets and other e-tailers to Webloyalty, or would be made

28  available for Webloyalty to intercept; (b) that Webloyalty would automatically charge Plaintiff

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

and the Class a monthly fee for Webloyalty's club membership programs, including Shopper Discounts & Rewards; (c) that Webloyalty's membership programs, including Shopper Discounts & Rewards provides no meaningful benefits to Plaintiff and the Class; and (d) that MovieTickets and other e-tailers profit from Plaintiff and the Class being unwittingly enrolled in Webloyalty's membership programs, including Shopper Discounts & Rewards.

89.     Simply put, Webloyalty stole money from Plaintiff and the Class by false pretenses when they deceived Plaintiff and each Class member into believing that by clicking on the advertisement, they would be receiving a gift voucher or coupon. Instead, when Plaintiff and Class members clicked on the advertisement, they were unknowingly enrolled into a membership program, such as Shopper Discounts & Rewards, that charged a $10.00 to $12.00 monthly fee. This scheme is fraudulent, is the basis for the civil theft claim, and is equivalent of each Class member having money stolen from his or her wallet each month.

90.     Webloyalty's false statements/omissions of material fact were not made innocently or inadvertently, but were instead made with the intent to obtain money from Plaintiff and the Class by false pretenses.

91.     Webloyalty's silence and omissions as to the material facts outline above were material insofar as such silence and omissions caused the Class to, without their knowledge, enable Webloyalty to defraud them out of $10.00 to $12.00 per month.

92.     Webloyalty knew that its actions would result in the theft of money for Plaintiff and the Class. Indeed, Webloyalty has been aware for years that thousands of consumers have complained to Webloyalty, to MovieTickets, to other Webloyalty e-tailers, on the internet, and to local, state and federal authorities about its scheme. The complaints were so pervasive that the U.S. Senate Committee launched an investigation. Although the investigation is not complete, the Senate Commission found that Webloyalty, along with its e-tailers, including MovieTickets, used highly aggressive sales tactics to charge millions of American consumers for services the consumers do not want and do not understand they have purchased and that Webloyalty's enrollment process via data pass is inherently deceptive and misleading because it, among other things, exploits consumers expectations[1] about purchasing items through the internet.

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    Webloyalty knew that consumers rely on process of providing their billing information as a

2    barrier to unexpected charges, the consumers believe they cannot incur financial obligations to

3    anyone other than MovieTickets, or other Webloyalty e-tailers, absent re-typing their entire

4    billing information, and that consumers expect to be able to cancel any unwanted transaction if a

5    site requests billing information that the user does not want to provide.

6    **93.**     Webloyalty intended to and did defraud Plaintiff and the Class as evidenced by

7    Webloyalty conduct alleged in the complaint.

8    **94.**     Plaintiff and the Class were induced to click on Webloyalty's advertisement by its

9    fraudulent acts, and were injured thereby.

10   **95.**     Webloyalty obtained money from Plaintiff and the Class as a direct and proximate

11   cause of its fraud by false pretenses, and Plaintiff and the Class have not been compensated for

12   the payment of such money.

### FOURTH CLAIM
#### For Unjust Enrichment
#### Brought by Plaintiff and the Class
#### Against Webloyalty

16   **96.**     Plaintiff refers to and incorporates by reference the above paragraphs as though

17   set forth fully herein.

18   **97.**     Webloyalty accessed and received payments from Plaintiff and the Class' credit

19   and debit card accounts without their legal consent and thus knowingly received a benefit from

20   Plaintiff and the Class.

21   **98.**     Webloyalty has no valid or legal basis to access and charge Plaintiff and each

22   Class member's credit and debit cards for fees associated with its membership programs, like

23   Shopper Discounts & Rewards.

24   **99.**     Webloyalty received, and continues to receive, substantial fees by charging

25   Plaintiff and class members credit and debit card accounts and/or using Plaintiff's and the Class'

26   billing information to earn money for itself.

27   **100.**    These fees, compensation, and/or profits constitute unjust enrichment for

28   Webloyalty and must be disgorged.

CLASS ACTION COMPLAINT

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

**101.** Plaintiff and the Class are entitled to recover from Webloyalty all amounts wrongfully collected and improperly retained by Webloyalty, plus interest thereon.

**102.** As a direct and proximate result of Webloyalty's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Webloyalty of the benefit conferred by Plaintiff and the Class.

**103.** Plaintiff and the Class have no adequate remedy at law.

**104.** By billing Plaintiff's and the Class members' credit and debit accounts without authorization as set forth herein and by otherwise billing Class members for joining the sham membership programs, including Shopper Discounts & Rewards, that offers no meaningful benefits, services or products, Webloyalty received unearned financial gains and unjustly retained the financial gains at Plaintiff's and the Class' expense.

**105.** It would be inequitable for Webloyalty to retain the profits, benefits, and other compensation obtained from its wrongful conduct as alleged herein.

**106.** As a result of this unjust enrichment, Plaintiff and the Class seek damages in an amount sufficient to compensate them for their losses. These losses include the amount Webloyalty was unjustly enriched by the unauthorized charges to Plaintiff's and the Class' credit and debit cards and interest in amount to be proven at trial. Plaintiff and the Class further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Webloyalty from its wrongful conduct.

**FIFTH CLAIM**
**For Unjust Enrichment**
**Brought by Plaintiff and the MovieTickets Subclass**
**Against MovieTickets**

**107.** Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

**108.** MovieTickets received fees, kickbacks or bounties from Webloyalty for permitting Webloyalty to obtain and/or intercept Plaintiff's and the MovieTickets Subclass' personal and private credit and debit card information, which Webloyalty used to charge its illegal membership program fees and thus have knowingly received benefits from Plaintiff and

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

CLASS ACTION COMPLAINT




1   the MovieTickets Subclass.  MovieTickets, for instance, received over $10 million in fees,

2   kickbacks, or bounties from Webloyalty.

3       **109.**   MovieTickets has no valid basis to accept payments from Webloyalty, which are

4   actually payments from Plaintiff and the MovieTickets Subclass for accessing and charging

5   Plaintiff's and the MovieTickets Subclass' credit and debit cards for fees associated with

6   Webloyalty's membership programs.

7       **110.**   MovieTickets received, and continues to receive, substantial fees from

8   Webloyalty as a result of Webloyalty's scheme of unilaterally charging Plaintiff's and the

9   MovieTickets Subclass Class' credit and debit card accounts and/or using their billing

10   information to earn money for itself.

11       **111.**   These fees, compensation, and/or profits constitute unjust enrichment for

12   MovieTickets and must be disgorged.

13       **112.**   Plaintiff and the MovieTickets Subclass are entitled to recover from MovieTickets

14   all amounts wrongfully collected and improperly retained by MovieTickets plus interest thereon.

15       **113.**   As a direct and proximate result of MovieTickets' unjust enrichment, Plaintiff and

16   the MovieTickets Subclass have suffered injury and are entitled to reimbursement, restitution

17   and disgorgement from MovieTickets of the benefit conferred by Plaintiff and the MovieTickets

18   Subclass.

19       **114.**   Plaintiff and the MovieTickets Subclass have no adequate remedy at law.

20       **115.**   By assisting Webloyalty to bill Plaintiff's and the MovieTickets Subclass' credit

21   and debit accounts without authorization as set forth herein and by otherwise assisting

22   Webloyalty to bill Class members for joining the sham Membership programs, including

23   Shopper Discounts & Rewards, that offers no meaningful benefits, services or products,

24   MovieTickets received unearned financial gains and unjustly retained the financial gains at

25   Plaintiff's and the Class' expense in the form of kickbacks and bounties.

26       **116.**   It would be inequitable for MovieTickets to retain the profits, benefits, and other

27   compensation obtained from its wrongful conduct as alleged herein.

28   / / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-33-



STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

117. As a result of this unjust enrichment, Plaintiff and the MovieTickets Subclass seek damages in an amount sufficient to compensate them for their losses. These losses include the amount MovieTickets was unjustly enriched by the unauthorized charges to Plaintiff's and the MovieTickets Subclass' credit and debit cards and interest in amount to be proven at trial. Plaintiff and the MovieTickets Subclass further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by MovieTickets from its wrongful conduct.

### SIXTH CLAIM
**Money Had & Received**
**Brought by Plaintiff and the Class**
**Against Webloyalty**

118. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

119. As a result of the conduct alleged herein, Webloyalty improperly received monies from Plaintiff and the Class they were not legally entitled to receive.

120. Plaintiff and the Class have a claim for improperly paid fees for the Membership programs, including Shopper Discounts & Rewards.

121. Equity and good conscience requires that Webloyalty ought to pay over such additional monies, described above, to Plaintiff and the Class.

122. As a direct and proximate result of Webloyalty's inappropriate practices, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement in the amount necessary to restore them to the position they would have been in if Webloyalty had not improperly collected and retained the aforementioned fees.

### SEVENTH CLAIM
**Money Had & Received**
**Brought by Plaintiff and the MovieTickets Subclass**
**Against MovieTickets**

123. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

/ / /

124. As a result of the conduct alleged herein, MovieTickets improperly received monies from Plaintiff and the Class they were not legally entitled to receive.

125. Plaintiff and the MovieTickets Subclass have a claim for improperly paid fees for the Membership programs, including Shopper Discounts & Rewards.

126. MovieTickets financially benefited from the improperly paid fees by Plaintiff and the MovieTickets Subclass in the form of kickbacks and bounties from Webloyalty.

127. Equity and good conscience requires that MovieTickets ought to pay over such additional monies, described above, to Plaintiff and the MovieTickets Subclass.

128. As a direct and proximate result of MovieTickets' assistance with Webloyalty's inappropriate practices, Plaintiff and the MovieTickets Subclass have suffered injury and are entitled to reimbursement, restitution and disgorgement in the amount necessary to restore them to the position they would have been in if MovieTickets had not assisted Webloyalty with improperly collecting and retaining the aforementioned fees and had not profited from Webloyalty's improper conduct as well.

### EIGHTH CLAIM
**For Negligent Misrepresentations**
**Brought by Plaintiff and the California Subclass**
**Against Webloyalty**

129. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

130. Webloyalty through its joint venture with MovieTickets and all DOE e-tailers represented to Plaintiff and the California Subclass that they would receive a coupon by providing their address. Hidden in an entirely separate area on the website are deceptive terms and conditions stating that the consumer would be charged for enrolling in a club membership program. Webloyalty knew, or reasonably should have known that Plaintiff and the California Subclass would likely not see the hidden terms and conditions, and that Plaintiff would not have provided his address if he knew Webloyalty would thereafter begin billing his debit card. Webloyalty knew that Plaintiff and the California Subclass would not provide their billing information or intentionally enroll in the rewards program if Webloyalty openly asked for

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    everyone's credit or debit card information. In short, Webloyalty intercepted Plaintiff's and the

2    California Subclass' billing information without their knowledge or consent.

3         **131.** Webloyalty's conduct resulted in Plaintiff and the California Subclass to suffer

4    unauthorized charges to their credit and debit cards for savings benefits that were never

5    requested or provided.

6         **132.** Webloyalty's representations were false, and their omissions were material.

7         **133.** Webloyalty had no reasonable grounds for believing the representations set forth

8    above to be true and for not being aware of the material omissions.

9         **134.** At the time of Webloyalty's representations and omissions, Plaintiff and the

10   California Subclass were ignorant of the representations' falsity and were ignorant of the omitted

11   and/or concealed facts. In reliance on these misrepresentations and without the benefit of the

12   material omissions, Plaintiff and the California Subclass were damaged by unauthorized charges

13   to their credit and debit cards. Had Plaintiff and the California Subclass known the actual facts,

14   they would have not tried to obtain the seemingly complimentary coupon.

15        **135.** Reliance on Webloyalty's representations and omissions was justified because

16   Plaintiff and the California Subclass had no reason to believe that unauthorized charges were

17   going to be made to their credit and debit accounts.

18        **136.** Plaintiff and the California Subclass have been damaged by Webloyalty's

19   negligent misrepresentations in an amount to be proven at trial.

20   

**NINTH CLAIM**
**For Negligent Misrepresentations**

21   **Brought by Plaintiff and the MovieTickets California Subclass**
**Against MovieTickets**

22   

23        **137.** Plaintiff refers to and incorporates by reference the above paragraphs as though

24   set forth fully herein.

25        **138.** MovieTickets represented to Plaintiff and the MovieTickets California Subclass

26   that it would not disclose or share their billing information to Webloyalty unless authorized to do

27   so. But MovieTickets concealed the fact that they intended to transmit to Webloyalty and/or

28   allowed Webloyalty to intercept Plaintiff's and the MovieTickets California Subclass' billing

-36-

1    information regardless of whether they had authorization to do so.

2        **139.** Further, MovieTickets shared their customers' billing information with

3    Webloyalty, without informed authorization, knowing that Webloyalty was going to unlawfully

4    charge Plaintiff's and the MovieTickets California Subclass' credit and debit accounts for a

5    shame club membership program.

6        **140.** MovieTickets further misrepresented that Plaintiff and MovieTickets California

7    Subclass could receive a coupon by providing their address. Hidden in an entirely separate area

8    on the website are deceptive terms and conditions stating that the consumer would be charged for

9    enrolling in a club membership program. MovieTickets knew, or reasonably should have known

10   that Plaintiff and the MovieTickets California Subclass would likely not see the hidden terms and

11   conditions, and that Plaintiff would not have provided his address if he knew MovieTickets via

12   Webloyalty would thereafter begin billing his debit card. MovieTickets knew that Plaintiff and

13   the MovieTickets California Subclass would not provide their billing information or intentionally

14   enroll in the rewards program if Webloyalty openly asked for everyone's credit or debit card

15   information. In short, MovieTickets deceptively transmitted to Webloyalty, or allowed

16   Webloyalty to intercept, Plaintiff's and the MovieTickets California Subclass' billing

17   information without their knowledge or consent.

18       **141.** MovieTickets' conduct resulted in Plaintiff and the MovieTickets California

19   Subclass to suffer unauthorized charges to their credit and debit cards for savings benefits that

20   were never requested or provided.

21       **142.** MovieTickets' representations were false, and their omissions were material.

22       **143.** MovieTickets had no reasonable grounds for believing the representations set

23   forth above to be true and for not being aware of the material omissions.

24       **144.** At the time of MovieTickets' representations and omissions, Plaintiff and the

25   Class were ignorant of the representations' falsity and were ignorant of the omitted and/or

26   concealed facts. In reliance on these misrepresentations and without the benefit of the material

27   omissions, Plaintiff and the MovieTickets California Subclass were damaged by unauthorized

28   charges to their credit and debit cards. Had Plaintiff and the MovieTickets California Subclass

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1   known the actual facts, they would have not purchased merchandise from MovieTickets or tried

2   to obtain the seemingly complimentary coupon.

3       **145.**    Reliance on MovieTickets' representations and omissions was justified because

4   Plaintiff and the MovieTickets California Subclass had no reason to believe that unauthorized

5   charges were going to be made to their credit and debit accounts.

6       **146.**    Plaintiff and the MovieTickets California Subclass have been damaged by

7   MovieTickets' negligent misrepresentations in an amount to be proven at trial.

8                                        **TENTH CLAIM**
                              **For Fraudulent Misrepresentations/Omissions**
9                            **Brought by Plaintiff and the California Subclass**
                                       **Against Webloyalty**
10

11      **147.**    Plaintiff refers to and incorporates by reference the above paragraphs as though

12  set forth fully herein.

13      **148.**    Common law fraud is the making of a knowingly false representation or

14  concealment of a material fact with intent to deceive or induce reliance that causes justifiable

15  reliance and resulting damages. And California Civil Code section 1710 defines deceit/fraud as

16  either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be

17  true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground

18  for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or

19  who gives information of other facts which are likely to mislead for want of communication of

20  that fact; or (4) a promise, made without any intention of performing it.

21      **149.**    Webloyalty, through MovieTickets' website, appear to offer Plaintiff and the

22  California Subclass a complimentary coupon, when in reality it was trying to enroll Plaintiff and

23  California Subclass in a club membership program. Webloyalty tout its various coupon offers

24  and club membership programs, like Shopper Discounts & Rewards, as a legitimate savings club

25  that provides coupons, gift cards, and other savings benefits to its members. In reality, the club

26  membership programs are nothing more than a sham that provided no meaningful benefits,

27  products or services to its members. The programs merely function as a vehicle to justify

28  charging Plaintiff's and California Subclass' credit and debit cards.

150. Webloyalty further misrepresent that Plaintiff and the California Subclass could receive a "free" coupon by providing some personal information, like their address. Hidden in an entirely separate area on the website are deceptive terms and conditions stating that Plaintiff and the California Subclass would be charged for enrolling in the club membership program. Webloyalty knew, or reasonably should have known, that Plaintiff would likely not see the hidden terms and conditions, and that Plaintiff would not have provided his address if he knew Webloyalty would thereafter begin billing his debit card. Webloyalty intentionally did not request Plaintiff to provide his complete credit and debit card information at the time of enrollment because that would have likely put Plaintiff on notice that he was about to enter into a separate transaction with Webloyalty. Webloyalty knew that Plaintiff would not provide his credit or debit card information or intentionally enroll in the rewards program if Webloyalty directly asked Plaintiff to provide his credit and debit card information.

151. Plaintiff and the California Subclass relied on Webloyalty's misrepresentations and omissions and were damaged because unauthorized charges were made to their credit and debit accounts. Further, Plaintiff and the California Subclass received no meaningful benefits, services or products from Shopper Discounts & Rewards. Webloyalty thus reaped unearned financial gains from the unauthorized charges to Plaintiff's and the California Subclass' credit and debit cards. This conduct is unjust and unlawful and thus violates California Civil Code section 1710.

152. As a proximate result of Webloyalty's fraud, Plaintiff and the California Subclass have been damaged in an amount that was improperly charged to their credit and debit cards and all other resulting damages.

153. Plaintiff and the California Subclass are further informed and believe that Webloyalty's conduct as was motivated by malice, fraud, and oppression, and was done in conscious disregard of their rights. Punitive damages should be assessed against Webloyalty in an amount that would punish and deter Webloyalty from further engaging in fraud.

154. Additionally, Webloyalty concealed material information about the coupon offer and club membership programs from Plaintiff and California Subclass members. Webloyalty

1  failed to disclose that Plaintiff and California Subclass members would be enrolled in the

2  program and subject to monthly fees.

3      **155.**    The concealed information is material in that a reasonable consumer would find

4  information important when deciding whether to purchase products from Webloyalty's e-tailers'

5  websites. Had the concealed information been disclosed to Plaintiff and California Subclass,

6  they would have acted differently in that they would not have attempted to retrieve the purported

7  free coupon, or would have immediately canceled their membership before they were charged.

8      **156.**    Plaintiff and the California Subclass justifiably acted or relied upon to their

9  detriment the omissions and misrepresentations by Webloyalty.

10      **157.**    Webloyalty was and continues to be under a duty to Plaintiff and the California

11  Subclass to disclose these facts because:

12      a. Webloyalty is in a superior position to know the truth about the reward

13      membership programs and the business practice of receiving billing through a

14      data pass system; and

15      b. Webloyalty actively concealed from Plaintiff and the California Subclass the true

16      nature of the programs and its true practices with respect to the use of billing

17      information.

18      **158.**    Webloyalty intentionally represented and concealed from and/or failed to

19  disclose to Plaintiff and the California Subclass the facts described above with the intent to

20  defraud, and for the purpose of inducing Plaintiff and the California Subclass to involuntarily

21  enroll in illusory club membership programs. In short, Webloyalty fraudulently enrolled

22  Plaintiff and California Subclass into its club membership programs and then charged Plaintiff's

23  and California Subclass' credit and debit accounts without authorization.

24      **159.**    As a direct and proximate cause of Webloyalty's misconduct, Plaintiff and the

25  California Subclass have suffered actual damages in that they have paid activation and monthly

26  fees without receiving any benefits, discounts or savings.

27      **160.**    Webloyalty's misconduct has been and is wanton and/or reckless and/or shows a

28  reckless indifference to the interests of others.

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

CLASS ACTION COMPLAINT

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

161.    Plaintiff and the California Subclass demand judgment against Webloyalty for actual and punitive damages for themselves and each member of the California Subclass, plus attorneys' fees for the establishment of a common fund, interest, and costs.

## ELEVENTH CLAIM
### For Fraudulent Misrepresentations/Omissions
### Brought by Plaintiff and the MovieTickets California Subclass
### Against MovieTickets

162.    Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

163.    Common law fraud is the making of a knowingly false representation or concealment of a material fact with intent to deceive or induce reliance that causes justifiable reliance and resulting damages. And California Civil Code section 1710 defines deceit/fraud as either: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing it.

164.    MovieTickets represents through its website that it would not transmit Plaintiff and the MovieTickets California Subclass' billing information absent authorization. MovieTickets makes this representation with the intent to induce Plaintiff and the MovieTickets California Subclass to purchase merchandise from MovieTickets under the guise that MovieTickets would protect their information.  In actuality, MovieTickets transmits the information to their partner Webloyalty and/or allow Webloyalty to intercept the information during Plaintiff's and the MovieTickets California Subclass' purchase transaction. Webloyalty then makes unauthorized charges to Plaintiff's and the MovieTickets California Subclass' credit and debit accounts under the guise that Plaintiff and the MovieTickets California Subclass enrolled in a club membership program, which they did not do. MovieTickets then received bounties or kickbacks from the unauthorized charges.

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

165. Further, MovieTickets appears to offer Plaintiff and MovieTickets California Subclass a complimentary coupon, when in reality they are trying to enroll Plaintiff and MovieTickets California Subclass in a club membership program. MovieTickets also touted various programs, like Shopper Discounts & Rewards, as a legitimate savings club that provides coupons, gift cards, and other savings benefits to its members. In reality, the programs were nothing more than a sham that provided no meaningful benefits, products or services to its members. The programs merely functioned as a vehicle to charge Plaintiff's and MovieTickets California Subclass' credit and debit cards.

166. MovieTickets further misrepresents that Plaintiff and MovieTickets California Subclass could receive a "free" coupon by providing some personal information, like their address. Hidden in an entirely separate area on the website are deceptive terms and conditions stating that Plaintiff would be charged for enrolling in the club membership program. MovieTickets knew, or reasonably should have known, that Plaintiff would likely not see the hidden terms and conditions, and that Plaintiff would not have provided his address if he knew Webloyalty would thereafter begin billing his debit card. MovieTickets intentionally did not request Plaintiff to provide his credit and debit card information at the time of enrollment because that likely would have put Plaintiff on notice that he was about to enter into a separate transaction with Webloyalty. MovieTickets knew that Plaintiff would not provide his credit or debit card information or intentionally enroll in the rewards program if MovieTickets required Webloyalty to directly ask Plaintiff to provide his credit and debit card information.

167. Plaintiff and the MovieTickets California Subclass relied on MovieTickets' misrepresentations and omissions and were damaged because unauthorized charges were made to their debit account. Further, Plaintiff and the MovieTickets California Subclass received no benefits, services or products from Shopper Discounts & Rewards or any other Webloyalty club membership program. MovieTickets thus reaped unearned financial gains the unauthorized charges to Plaintiff's and the MovieTickets California Subclass' credit and debit cards. This conduct is unjust and unlawful and thus violates California Civil Code section 1710.

/ / /

168. As a proximate result of MovieTickets' fraud, Plaintiff and the MovieTickets California Subclass have been damaged in an amount that was improperly charged to their credit and debit cards and all other resulting damages.

169. Plaintiff and the MovieTickets California Subclass are further informed and believe that MovieTickets' conduct was motivated by malice, fraud, and oppression, and was done in conscious disregard of their rights. Punitive damages should be separately assessed against MovieTickets in an amount that would punish and deter them from further engaging in fraud.

170. Additionally, MovieTickets concealed material information about the coupon offer and club membership programs from Plaintiff and the MovieTickets California Subclass. MovieTickets failed to disclose that Plaintiff and the MovieTickets California Subclass would be enrolled in the program and subject to monthly fees.

171. MovieTickets also concealed the material fact that it was transmitting Plaintiff's and MovieTickets California Subclass' billing information to Webloyalty without authorization. At the same time, MovieTickets made representations to Plaintiff and the MovieTickets California Subclass that billing information would not be transmitted or used without authorization beyond what was necessary to fill the customer's original order. Plaintiff and the MovieTickets California Subclass were unwittingly enrolled in club membership programs while attempting to obtain a seemingly free coupon. MovieTickets also concealed and failed to disclose that it was financially benefiting from its partnership with Webloyalty.

172. The concealed information is material in that a reasonable consumer would find information important when deciding whether to purchase products from MovieTickets' website. Had the concealed information been disclosed to Plaintiff and the MovieTickets California Subclass, they would have acted differently by not providing MovieTickets with their billing information, not attempting to receive the purported free coupon, or by immediately canceling their membership before they were charged.

173. Plaintiff and the MovieTickets California Subclass justifiably acted or relied upon to their detriment the omissions and misrepresentations by MovieTickets.

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-43-

1   **174.** MovieTickets was and continues to be under a duty to Plaintiff and the

2   MovieTickets California Subclass to disclose these facts because:

3       a. MovieTickets is in a superior position to know the truth about the club

4          membership programs and the business practice of transmitting billing

5          information to Webloyalty through a data pass system; and

6       b. MovieTickets actively concealed from Plaintiff and the MovieTickets California

7          Subclass the true nature of the club membership programs and their true practices

8          with respect to the use of billing information.

9   **175.** MovieTickets intentionally represented and concealed from and/or failed to

10  disclose to Plaintiff and the MovieTickets California Subclass the facts described above with the

11  intent to defraud, and for the purpose of inducing Plaintiff and the MovieTickets California

12  Subclass to provide their billing information, which was later transmitted to Webloyalty to

13  involuntarily enroll Plaintiff and MovieTickets California Subclass in illusory club membership

14  programs. By concealing this material information, MovieTickets sought to ensure that Plaintiff

15  and MovieTickets California Subclass would complete their transaction on the MovieTickets'

16  website while allowing it to still profit by giving that information to Webloyalty without

17  authorization to enroll Plaintiff and MovieTickets California Subclass in the sham program.

18  MovieTickets knew that Plaintiff and MovieTickets California Subclass would not have

19  provided their billing information if all material information was disclosed. Despite this,

20  MovieTickets fraudulently enrolled Plaintiff and MovieTickets California Subclass into club

21  membership programs so that Webloyalty could charge their credit and debit accounts without

22  authorization.

23  **176.** Had MovieTickets disclosed that they intended to transmit Plaintiff's and

24  MovieTickets California Subclass' billing information to Webloyalty without their permission

25  and that their credit and debit accounts would be charged as a result, Plaintiff and the

26  MovieTickets California Subclass would have taken additional steps to secure their accounts,

27  would not have provided their billing information and/or purchased products from MovieTickets.

28  / / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-44-

177. As a direct and proximate cause of MovieTickets' misconduct, Plaintiff and the MovieTickets California Subclass have suffered actual damages in that they have paid activation and monthly fees without receiving any benefits, discounts or savings.

178. MovieTickets' misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

179. Plaintiff and the MovieTickets California Subclass demand judgment against MovieTickets for actual and punitive damages for themselves and each member of the MovieTickets California Subclass, plus attorneys' fees for the establishment of a common fund, interest, and costs.

**TWELFTH CLAIM**
**For Violations of the Consumers Legal Remedies Act Cal. Civil Code section 1750 *et seq.***
**Brought by Plaintiff and the California Subclass**
**Against Webloyalty**

180. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

181. California Civil Code section 1770(a) provides that it is unlawful to use unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.

182. Webloyalty is a "person" as defined by Civil Code § 1761(c).

183. Plaintiff and the California Subclass are "consumers" within the meaning of Civil Code §1761(d).

184. Webloyalty's club membership programs constitute "services" as defined by Civil Code § 1761(b).

185. The purported benefits of the programs in which Plaintiff and California Subclass were enrolled, including coupons and savings discounts, also constitute "goods" as defined by Civil Code § 1761(a).

186. Plaintiff's and California Subclass' unwitting enrollment in and payment for various club membership programs operated by Webloyalty, including Shopper Discounts &

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1  Rewards, are "transaction[s]" as defined by Civil Code § 1761(e).

2      **187.** Webloyalty purported to provide goods to Plaintiff and California Subclass by

3  offering coupons in connection with the purchase of movie tickets and other merchandise from

4  Webloyalty's e-tailers.

5      **188.** Venue is proper pursuant to Civil Code § 1780(c) because Webloyalty does a

6  significant amount of business in this county.

7      **189.** Webloyalty violated the CLRA by misrepresenting and concealing its affiliation

8  and association with its e-tailers, and by obtaining Plaintiff's and California Subclass' billing

9  information. Webloyalty also violated the CLRA by misrepresenting the true nature of the

10  coupon offer. For instance, Webloyalty presented the coupon as a free offer when in fact the

11  coupon served to entice customers to unwittingly enroll in a club membership program. Further,

12  Plaintiff and California Subclass received no meaningful savings or discounts as a result of being

13  enrolled, particularly since they did not even know that they had been enrolled in any

14  membership program until they notice strange charges on their credit card or debit account

15  statements.

16      **190.** Webloyalty specifically violated California Civil Code section 1770(a) by, among

17  other things:

18          a. Misrepresenting the affiliation, connection, or association with, or certification

19             by, another, in violation of California Civil Code section 1770(a)(3);

20          b. Representing that goods or services have sponsorship, approval, characteristics,

21             ingredients, uses, benefits, or quantities which they do not have or that a person

22             has a sponsorship, approval, status, affiliation, or connection which he or she does

23             not have, in violation of California Civil Code section 1770(a)(5);

24          c. Advertising goods or services with intent not to sell them as advertised, in

25             violation of California Civil Code section 1770(a)(9);

26          d. Making false or misleading statements of fact concerning reasons for, existence

27             of, or amounts of price reductions, in violation of California Civil Code section

28             1770(a)(13);

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

e. Representing that a transaction confers or involves rights remedies, or obligations which it does not have or involve, or which are prohibited by law in violation of California Civil Code section 1770(a)(14);

f. Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of California Civil Code section 1770(a)(17); and

g. Inserting an unconscionable provision in the contract, in violation of California Civil Code section 1770(a)(19).

191.   Webloyalty engaged in deceptive practices, in violation of the CLRA, that were designed to induce Plaintiff and the California Subclass to provide an address  or other personal information in connection with receiving a free coupon, and to force Plaintiff and California Subclass to involuntarily enroll in the program.

192.   By engaging in the foregoing unfair or deceptive conduct, Webloyalty actively concealed and failed to disclose material facts about their coupons, club membership programs, and use of customers' billing information.

193.   These representations are material facts that a reasonable person would have considered important in deciding whether or not to purchase products on Webloyalty's e-tailers' websites or to provide personal information Webloyalty's e-tailers, like MovieTickets.  Plaintiff and the California Subclass justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts.

194.   Webloyalty's acts were intended to be deceptive and/or fraudulent.  Specifically, Webloyalty secretly enrolled Plaintiff and California Subclass in Shopper Discounts & Rewards, as well as other club membership programs, without authorization.

195.   Plaintiff and the California Subclass suffered injury in fact as a direct result of Webloyalty's misleading marketing campaign and/or concealment of material facts in violation of the CLRA in that they have paid, or will have to pay, fees in connection with the free coupon offers.  Had Webloyalty disclosed the true nature of the coupon offer and its intention to obtain

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1  billing information from its e-tailers through data pass for the purposes of charging their credit

2  and debit accounts when no services or benefits are rendered in exchange, Plaintiff and the

3  California Subclass would have taken steps to further secure or withhold their information and/or

4  would not have purchased products on the e-tailers' websites.

5      196.   To this day, Webloyalty continues to, among other things, violate the CLRA by

6  concealing the true nature of the coupon offers and by obtaining billing information without

7  authorization through the deceptive data pass process and misrepresenting and concealing the

8  true nature of the program.

9      197.   Plaintiff and the California Subclass demand judgment against Webloyalty under

10  the CLRA for damages and injunctive relief as may be appropriate and an award of attorneys'

11  fees and costs.

**THIRTEENTH CLAIM**
**For Violations of the Consumers Legal Remedies Act Cal. Civil Code section 1750 *et seq.***
**Brought by Plaintiff and the MovieTickets California Subclass**
**Against MovieTickets**

15      198.   Plaintiff refers to and incorporates by reference the above paragraphs as though

16  set forth fully herein.

17      199.   California Civil Code section 1770(a) provides that it is unlawful to use unfair

18  methods of competition and unfair or deceptive acts or practices in a transaction intended to

19  result or which results in the sale or lease of goods or services to any consumer.

20      200.   MovieTickets is a "person" as defined by Civil Code § 1761(c).

21      201.   Plaintiff and the MovieTickets California Subclass are "consumers" within the

22  meaning of Civil Code §1761(d).

23      202.   Movie tickets and other merchandise purchased by Plaintiff and MovieTickets

24  California Subclass from MovieTickets constitute "goods" as defined by Civil Code § 1761(a).

25      203.   The club membership programs at issue constitute "services" as defined by Civil

26  Code § 1761(b).

27      204.   The purported benefits of the programs in which Plaintiff and MovieTickets

28  California Subclass were enrolled, including coupons and discounts, also constitute "goods" as



1  defined by Civil Code § 1761(a).

2      **205.** Plaintiff's and MovieTickets California Subclass' purchase of movie tickets and

3  related merchandise, and their unwitting enrollment in and payment for various club membership

4  programs operated, including Shopper Discounts & Rewards, are "transaction[s]" as defined by

5  Civil Code § 1761(e).

6      **206.** MovieTickets provided or purported to provide goods to Plaintiff and

7  MovieTickets California Subclass by offering coupons in connection with the purchase of movie

8  tickets and related merchandise.

9      **207.** Venue is proper pursuant to Civil Code § 1780(c) because MovieTickets does a

10  significant amount of business in this County.

11      **208.** MovieTickets violated the CLRA by misrepresenting their affiliation and

12  association with third parties, including each other, and by sharing Plaintiff's and MovieTickets

13  California Subclass' billing information. MovieTickets also violated the CLRA by

14  misrepresenting the true nature of the coupon offer. For instance, MovieTickets and DOE e-

15  tailers presented the coupon as a free offer when in fact the coupon served to entice customers to

16  unwittingly enroll in a membership rewards program. Further, Plaintiff and MovieTickets

17  California Subclass received no meaningful savings or discounts as a result of being enrolled,

18  particularly since they did not even know that they had been enrolled in any membership

19  program until they notice strange charges on their credit card or debit account statements.

20      **209.** MovieTickets specifically violated California Civil Code section 1770(a) by,

21  among other things:

22          a. Misrepresenting the affiliation, connection, or association with, or certification

23              by, another, in violation of California Civil Code section 1770(a)(3);

24          b. Representing that goods or services have sponsorship, approval, characteristics,

25              ingredients, uses, benefits, or quantities which they do not have or that a person

26              has a sponsorship, approval, status, affiliation, or connection which he or she does

27              not have, in violation of California Civil Code section 1770(a)(5);

28  / / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-49-

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

c. Advertising goods or services with intent not to sell them as advertised, in violation of California Civil Code section 1770(a)(9);

d. Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code section 1770(a)(13);

e. Representing that a transaction confers or involves rights remedies, or obligations which it does not have or involve, or which are prohibited by law in violation of California Civil Code section 1770(a)(14);

f. Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of California Civil Code section 1770(a)(17); and

g. Inserting an unconscionable provision in the contract, in violation of California Civil Code section 1770(a)(19).

210. MovieTickets engaged in deceptive practices, in violation of the CLRA, that were designed to induce Plaintiff and the members of the Class to purchase products on MovieTickets' website (and provide their billing information to do so), to provide an address in connection with receiving a free coupon, and to force Plaintiff and MovieTickets California Subclass to involuntarily enroll in the program.

211. By engaging in the foregoing unfair or deceptive conduct, MovieTickets actively concealed and failed to disclose material facts about their coupons, club membership programs, and use of customers' billing information.

212. These representations are material facts that a reasonable person would have considered important in deciding whether or not to purchase products on MovieTickets' website or to provide personal information to MovieTickets. Plaintiff and the MovieTickets California Subclass justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts.

///

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

213.   MovieTickets' acts were intended to be deceptive and/or fraudulent.  Specifically, MovieTickets secretly enrolled Plaintiff and MovieTickets California Subclass in Shopper Discounts & Rewards, as well as other club membership programs, without authorization.

214.   Plaintiff and the MovieTickets California Subclass suffered injury in fact as a direct result of MovieTickets' misleading marketing campaign and/or concealment of material facts in violation of the CLRA in that they have paid, or will have to pay, fees in connection with Shopper Discounts & Rewards program, and other similar programs, from which they receive no benefits.  Had MovieTickets disclosed the true nature of the coupon offer and their intention to transmit billing information to Webloyalty for the purposes of charging their credit and debit accounts when no services or benefits are rendered in exchange, Plaintiff and the MovieTickets California Subclass would have taken steps to further secure or withhold their information and/or would not have purchased products on MovieTickets' website.

215.   To this day, MovieTickets continues to violate the CLRA by concealing its affiliation with the club membership program, by transmitting billing information without authorization through the deceptive data pass process and misrepresenting and concealing the true nature of the coupon offer.

216.   Plaintiff and the MovieTickets California Subclass demand judgment against MovieTickets under the CLRA for damages and injunctive relief as may be appropriate and an award of attorneys' fees and costs.

## FOURTEENTH CLAIM
**For False Advertising in Violation of Cal. Bus. & Prof. Code § 17500, et seq.**
**Brought by Plaintiff and the California Subclass**
**Against Webloyalty**

217.   Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

218.   The Unfair Practices Act defines false advertising to include the making or dissemination of any statements concerning property or services that are untrue or misleading, and which are known, or should have been known, to be untrue or misleading.

/ / /

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

219.   Webloyalty's acts, practices, misrepresentations and omissions as herein alleged are unlawful and amount to false advertising as set forth in California Business and Professions Code section 17500.  Webloyalty's practices, actions and inactions during purchase transactions were likely to mislead Plaintiff, the California Subclass, and the general public to believe that their billing information would not be misused or improperly obtained through the data pass system.  Plaintiff and the California Subclass relied on these representations and omissions when deciding whether to purchase products from Webloyalty's e-tailers, including MovieTickets, and would not have purchased products from Webloyalty's e-tailers, including MovieTickets, had they known that doing so would result in their billing information being deceptively obtained by Webloyalty or that they would unknowingly be enrolled in a illusory club membership program.  Plaintiff and the California Subclass suffered an injury in fact and lost money by, among other things, unauthorized charges to their credit and debit cards.

220.   Webloyalty's conduct constitutes fraudulent and false advertising because its practice is likely to mislead Plaintiff, the California Subclass, and the general public.  Webloyalty does so by deceiving and leading them to believe, among other things, that their billing information would not be misused or improperly disclosed and that they could receive a free coupon by providing certain information.

221.   Webloyalty's unlawful false advertising, as described herein, present a continuing threat to Plaintiff, the California Subclass, and the general public because Webloyalty: continues to wrongfully tout the sham coupon offers and club membership programs as legitimate; continues to mishandle California Subclass' billing information; and continues to charge their credit and debit cards without authorization.  In addition, Webloyalty has been unjustly enriched by its conduct.  Plaintiff, the California Subclass, and the general public seek equitable relief because they have no other adequate remedy at law.   Absent equitable relief, Webloyalty is likely to continue to injure customers, reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial proceedings.

222.   Plaintiff and the California Subclass request that this Court issue preliminary and permanent injunctions against such acts and practices.  Additionally, Plaintiff and the Class seek

restitution and recovery of attorneys' fees and litigation expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring Webloyalty to pay Plaintiff's attorneys' fees and litigation expenses.

### FIFTEENTH CLAIM
**For False Advertising in Violation of Cal. Bus. & Prof. Code § 17500, et seq.
Brought by Plaintiff and the MovieTickets California Subclass
Against MovieTickets**

223.    Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

224.    The Unfair Practices Act defines false advertising to include the making or dissemination of any statements concerning property or services that are untrue or misleading, and which are known, or should have been known, to be untrue or misleading.

225.    MovieTickets' acts, practices, misrepresentations and omissions as herein alleged are unlawful and amount to false advertising as set forth in California Business and Professions Code section 17500. MovieTickets' practices, actions and inactions during purchase transactions were likely to mislead Plaintiff, the MovieTickets California Subclass, and the general public to believe that their billing information would not be misused or improperly disclosed. Plaintiff and the MovieTickets California Subclass relied on these representations and omissions when deciding whether to purchase products from MovieTickets' website and would not have purchased products from MovieTickets had they known that doing so would result in their billing information being transmitted to Webloyalty or that they would unknowingly be enrolled in a illusory club membership program. Plaintiff and the MovieTickets California Subclass suffered an injury in fact and lost money by, among other things, unauthorized charges to their credit and debit cards.

226.    MovieTickets' conduct constitutes fraudulent and false advertising because its practice is likely to mislead Plaintiff, the MovieTickets California Subclass, and the general public. MovieTickets' does so by deceiving and leading them to believe, among other things, that their billing information would not be misused or improperly disclosed.

227.    MovieTickets' unlawful false advertising, as described herein, present a continuing threat to Plaintiff, the Class, and the general public because MovieTickets continues

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1  to wrongfully tout the sham coupon offers and club membership programs as legitimate;

2  continues to mishandle MovieTickets California Subclass' billing information; and continues to

3  profit from Webloyalty charging MovieTickets California Subclass' credit and debit cards

4  without authorization.  In addition, MovieTickets has been unjustly enriched by its conduct.

5  Plaintiff, the MovieTickets California Subclass, and the general public seek equitable relief

6  because they have no other adequate remedy at law.  Absent equitable relief, MovieTickets is

7  likely to continue to injure customers, reap unjust enrichment, and harm the public's interest,

8  thus engendering a multiplicity of judicial proceedings.

9      **228.**   Plaintiff and the MovieTickets California Subclass request that this Court issue

10  preliminary and permanent injunctions against such acts and practices.  Additionally, Plaintiff

11  and the MovieTickets California Subclass seek restitution and recovery of attorneys' fees and

12  litigation expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial

13  benefit doctrine, the common fund doctrine or other authority requiring MovieTickets to pay

14  Plaintiff's attorneys' fees and litigation expenses.

15  **SIXTEENTH CLAIM**<br>For Conversion<br>**Brought by Plaintiff and the California Subclass**<br>**Against Webloyalty**

16

17

18      **229.**   Plaintiff refers to and incorporates by reference the above paragraphs as though

19  set forth fully herein.

20      **230.**   Plaintiff and California Subclass had a right to retain the moneys taken from their

21  credit and debit accounts when they were enrolled in Webloyalty's club membership program

22  without authorization.  Plaintiff and California Subclass also have a right of ownership and

23  possession of their own billing information.

24      **231.**   Webloyalty wrongfully converted the funds it fraudulently obtained as a result of

25  enrolling Plaintiff and California Subclass in the illusory club membership programs without

26  authorization.  Webloyalty also wrongfully converted Plaintiff's and California Subclass' billing

27  information, which was provided for a limited purpose and used beyond the scope of what was

28  authorized.

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

232. Webloyalty touted the sham coupon offers and membership programs as legitimate and then used them as an excuse to bill Plaintiff and the Class' credit and debit cards without authorization. Webloyalty converted the funds it fraudulently obtained from Plaintiff and the California Subclass for its own use.

233. As a result of this conversion, Plaintiff and California Subclass were damaged because their credit and debit accounts were charged for unauthorized fees and monthly payments.

234. Plaintiff and the California Subclass are entitled to damages in an amount sufficient to compensate them for their losses. These losses include the amount Webloyalty was unjustly enriched by the unauthorized charges and interest in amount to be proven at trial.

235. Plaintiff and the California Subclass demand judgment against Webloyalty for damages arising from its misconduct, along with pre-judgment interest, costs of suit and other relief this Court deems appropriate. Because Webloyalty's acts were willful, wanton, malicious and oppressive, were undertaken with the intent to defraud, Plaintiff and the California Subclass further demand an award of exemplary and punitive damages.

## SEVENTEENTH CLAIM
### For Conversion
### Brought by Plaintiff and the MovieTickets California Subclass
### Against MovieTickets

236. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

237. Plaintiff and MovieTickets California Subclass had a right to retain the moneys taken from their credit and debit accounts when they were enrolled in Webloyalty's club membership program without authorization. Plaintiff and MovieTickets California Subclass also have a right of ownership and possession of their own billing information.

238. MovieTickets wrongfully received converted funds obtained as a result of enrolling Plaintiff and MovieTickets California Subclass in the illusory club membership programs without authorization. MovieTickets also wrongfully converted Plaintiff's and MovieTickets California Subclass' billing information, which was provided for a limited purpose

1    and used beyond the scope of what was authorized.

2        **239.**    MovieTickets used the sham coupon offers and membership programs as an

3    excuse to bill Plaintiff and the MovieTickets California Subclass' credit and debit cards without

4    authorization and converted the funds they fraudulently obtained from Plaintiff and the

5    MovieTickets California Subclass for their own use.

6        **240.**    As a result of this conversion, Plaintiff and MovieTickets California Subclass

7    were damaged because their credit and debit accounts were charged for unauthorized fees and

8    monthly payments and their billing information was wrongly disseminated to Webloyalty.

9        **241.**    Plaintiff and the MovieTickets California Subclass are entitled to damages in an

10    amount sufficient to compensate them for their losses.    These losses include the amount

11    MovieTickets was unjustly enriched by the unauthorized charges and interest in amount to be

12    proven at trial.

13        **242.**    Plaintiff and the MovieTickets California Subclass demand judgment against

14    MovieTickets for damages arising from its misconduct, along with pre-judgment interest, costs

15    of suit and other relief this Court deems appropriate.    Because MovieTickets' acts were willful,

16    wanton, malicious and oppressive, were undertaken with the intent to defraud, Plaintiff and the

17    MovieTickets California Subclass further demand an award of exemplary and punitive damages.

18

19                                **EIGHTEENTH CLAIM**
        **For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
20                          **Brought by Plaintiff and the California Subclass**
                                    **Against All Webloyalty**

21        **243.**    Plaintiff refers to and incorporates by reference the above paragraphs as though

22    set forth fully herein.

23        **244.**    The Unfair Competition Law, Business & Professions Code § 17200, *et seq.*

24    ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or

25    practice.    Unlawful business acts are those which are in violation of federal, state, county, or

26    municipal statutes or codes, common law, or federal and state regulations.

27        **245.**    Webloyalty's acts, practices, misrepresentations and omissions as herein alleged

28    are unlawful and violate the laws and statutes alleged herein, and thus amount to unfair

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-56-

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    competition as set forth in the UCL. As a direct and proximate cause of Webloyalty's violations

2    of the UCL, Plaintiff and the California Subclass suffered an injury in fact and have money

3    because, among other things, they have suffered unauthorized transmission or interception of

4    their billing information and unauthorized charges to their credit and debit cards, and because

5    they were charged for services and benefits they did not receive.

6         **246.** To the extent Webloyalty's and its e-tailers' websites and advertisements

7    contained terms that allowed Webloyalty to obtain Plaintiff and the California Subclass' billing

8    information absent affirmative and informed authorization, those terms are unconscionable and

9    thus unenforceable. And to the extent Webloyalty and its e-tailers' websites contained terms that

10    allowed Webloyalty to charge activation fees and monthly fees associated with customers

11    purportedly enrolling or participating in any rewards programs, those terms are likewise

12    unconscionable and thus unenforceable. As discussed above, Webloyalty's coupon offers and

13    club membership programs are a sham because the programs do not provide any meaningful

14    coupons or savings benefits.

15         **247.** Webloyalty's unlawful, unfair and fraudulent business practices, as described

16    herein, present a continuing threat to Plaintiff, and the California Subclass, and the general

17    public in that they continue to wrongfully tout their sham coupon offers and club membership

18    programs as legitimate, continue to wrongfully obtain and mishandle the California Subclass

19    members' billing information, and continue to bill their credit and debit cards without

20    authorization. In addition, Webloyalty has been unjustly enriched as a result of its conduct.

21    Plaintiff and the California Subclass seek equitable relief because they have no other adequate

22    remedy at law. Absent equitable relief, Webloyalty is likely to continue to injure consumers,

23    reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial

24    proceedings.

25         **248.** Webloyalty's acts and practices are unlawful because they violate California Civil

26    Code §§ 1572, 1668, 1709, 1710, 1770(a)(3), 1770(a)(5), 1770(a)(9), 1770(a)(14) and/or

27    1770(a)(17), as described above.

28    ///

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

**249.** Webloyalty's acts and practices are unlawful because they violate California Business & Professions Code § 22576. Webloyalty's retail partners are operators of commercial websites that collect personally identifiable information through selling goods to consumers. California Subclass members include consumers who used or visited the commercial website who reside in California. Webloyalty wrongfully obtained consumers' billing information without authorization and charged Plaintiff's and the California Subclass' debit and credit accounts without authorization.

**250.** Webloyalty's acts and practices are also unlawful because it violates, among other things, §17500 of the Business and Professions Code, the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, and common law, as alleged herein.

**251.** Webloyalty violated the UCL by fraudulently misrepresenting and concealing from and/or intentionally failing to disclose to Plaintiff and the California Subclass the true facts about its coupon offer and its business practice of transmitting billing information without authorization and its club membership programs, as alleged herein.

**252.** Webloyalty's conduct was fraudulent in violation of the UCL, in that Webloyalty actively misrepresented in, and/or concealed and omitted from, its advertising, marketing and other communications, material information about the coupon offers, club membership programs and the practices with respect to the use of consumers' information, including billing information, in a manner that has deceived and is likely to continue to deceive consumers and the public.

**253.** As alleged herein, Plaintiff and the California Subclass relied on these misrepresentations and omissions when providing Webloyalty's e-tailers with their billing information and purchasing products on its e-tailers' websites and, as a result, suffered an injury in fact and lost money.

**254.** Webloyalty's conduct was unfair in violation of the UCL, because, *inter alia,* the injury to Plaintiff and the California Subclass greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

255. To this day, Webloyalty continues to violate the UCL by continuing to misrepresent and actively conceal material information regarding its coupon offers, club membership programs, and data pass practices.

256. As a proximate result of Webloyalty's violation of the UCL, Webloyalty has been unjustly enriched and should be required to make restitution to Plaintiff and the California Subclass and/or disgorge their ill-gotten profits pursuant to Business & Professions Code § 17203.

257. Plaintiff and the California Subclass demand judgment against Webloyalty for injunctive relief, restitution, and/or proportional disgorgement of profits earned as a result of the conduct alleged herein, including promised discounts and savings that were not given, along with interest, attorneys' fees and costs pursuant to, inter alia, Cal. Code Civ. Proc. § 1021.5.

258. Plaintiff and the California Subclass request that this Court issue preliminary and permanent injunctions against such acts and practices. Additionally, Plaintiff and the California Subclass seek the recovery of attorneys' fees and litigation expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring Webloyalty to pay Plaintiff's attorneys' fees and litigation expenses.

### NINTEENTH CLAIM
**For Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
**Brought by Plaintiff and the MovieTickets California Subclass**
**Against MovieTickets**

259. Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

260. The Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or practice. Unlawful business acts are those which are in violation of federal, state, county, or municipal statutes or codes, common law, or federal and state regulations.

261. MovieTickets' acts, practices, misrepresentations and omissions as herein alleged are unlawful and violate the laws and statutes alleged herein, and thus amount to unfair competition as set forth in the UCL. As a direct and proximate cause of MovieTickets' violations of the UCL, Plaintiff and the MovieTickets California Subclass suffered an injury in

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    fact and have money because, among other things, they have suffered unauthorized transmission

2    or interception of their billing information and unauthorized charges to their credit and debit

3    cards, and because they were charged for services and benefits they did not receive.

4        **262.**  To the extent MovieTickets' website and advertisement contained terms that

5    allowed MovieTickets to transfer their customers' billing information to Webloyalty absent

6    affirmative and informed authorization, those terms are unconscionable and thus unenforceable.

7    And to the extent MovieTickets' website contained terms that allowed Webloyalty to charge

8    activation fees and monthly fees associated with customers purportedly enrolling or participating

9    in any rewards programs, those terms are likewise unconscionable and thus unenforceable. As

10   discussed above, MovieTickets' seemingly free coupon offer is nothing more than a sham.

11       **263.**  MovieTickets' unlawful, unfair and fraudulent business practices, as described

12   herein, present a continuing threat to Plaintiff, the MovieTickets California Subclass, and the

13   general public in that they continue to wrongfully tout their sham coupon offer, continue to

14   mishandle MovieTickets California Subclass' billing information, and continue to assist

15   Webloyalty in billing their consumer's credit and debit cards without authorization. In addition,

16   MovieTickets has been unjustly enriched as a result of its conduct.  Plaintiff and the

17   MovieTickets California Subclass seek equitable relief because they have no other adequate

18   remedy at law.  Absent equitable relief, MovieTickets is likely to continue to injure consumers,

19   reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial

20   proceedings.

21       **264.**  MovieTickets' acts and practices are unlawful because they violate California

22   Civil Code §§ 1572, 1668, 1709, 1710, 1770(a)(3), 1770(a)(5), 1770(a)(9), 1770(a)(14) and/or

23   1770(a)(17), as described above.

24       **265.**  MovieTickets' acts and practices are unlawful because they violate California

25   Business & Professions Code § 22576.  MovieTickets is an operator of a commercial website

26   that collects personally identifiable information through selling movie tickets and related

27   merchandise to consumers.  MovieTickets California Subclass members include consumers who

28   used or visited the commercial website who reside in California.  MovieTickets improperly

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

-60-

1    shared their customers' billing information with Webloyalty without authorization beyond what

2    was necessary to complete Plaintiff's and Class members' orders and permitted Webloyalty to

3    charge Plaintiff's and Class members' debit and credit accounts without authorization.

4        **266.** MovieTickets' acts and practices also are unlawful because they violate, among

5    other things, §17500 of the Business and Professions Code, and common law, as alleged herein.

6        **267.** MovieTickets violated the UCL by fraudulently misrepresenting and concealing

7    from and/or intentionally failing to disclose to Plaintiff and the MovieTickets California Subclass

8    the true facts about its coupon offer and business practice of transmitting billing information

9    without authorization to Webloyalty, as alleged herein.

10       **268.** MovieTickets' conduct was fraudulent in violation of the UCL, in that

11   MovieTickets actively misrepresented in, and/or concealed and omitted from, its advertising,

12   marketing and other communications, material information about the coupon offer and club

13   membership program and the practices with respect to the use of private consumer information,

14   including billing information, in a manner that has deceived and is likely to continue to deceive

15   consumers and the public.

16       **269.** As alleged herein, Plaintiff and the MovieTickets California Subclass relied on

17   these misrepresentations and omissions when providing MovieTickets' billing information and

18   purchasing products on MovieTickets' website and, as a result, suffered an injury in fact and lost

19   money.

20       **270.** MovieTickets violated the UCL by representing to Plaintiff and the MovieTickets

21   California Subclass members that their billing information would be secure and not transmitted

22   to unauthorized parties, while knowing that the information would be transmitted to Webloyalty

23   without explicit authorization.

24       **271.** MovieTickets' conduct was unfair in violation of the UCL, because, *inter alia,* the

25   injury to Plaintiff and the MovieTickets California Subclass greatly outweighs any alleged

26   countervailing benefit to consumers or competition under all of the circumstances.

27       **272.** To this day, MovieTickets continues to violate the UCL by continuing to

28   misrepresent and actively conceal material information regarding the coupon offers, club

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

1    membership programs, and data pass practices.

2         **273.**    As a proximate result of MovieTickets' violation of the UCL, they have been

3    unjustly enriched and should be required to make restitution to Plaintiff and the MovieTickets

4    California Subclass and/or disgorge their ill-gotten profits pursuant to Business & Professions

5    Code § 17203.

6         **274.**    Plaintiff and the MovieTickets California Subclass demand judgment against

7    MovieTickets for injunctive relief, restitution, and/or proportional disgorgement of profits earned

8    as a result of the conduct alleged herein, including promised discounts and savings that were not

9    given, along with interest, attorneys' fees and costs pursuant to, inter alia, Cal. Code Civ. Proc. §

10   1021.5.

11        **275.**    MovieTickets' unlawful, unfair, and fraudulent business practices, as described

12   herein, present a continuing threat to Plaintiff, the MovieTickets California Subclass, and the

13   general public in that MovieTickets continues to wrongfully tout the sham coupon offers and

14   club membership programs as legitimate, continues to mishandle the MovieTickets California

15   Subclass' billing information, and continues to bill MovieTickets California Subclass' credit and

16   debit cards without authorization.   In addition, MovieTickets has been unjustly enriched as a

17   result of its conduct.  Plaintiff and the MovieTickets California Subclass seek equitable relief

18   because they have no other adequate remedy at law.   Absent equitable relief, MovieTickets is

19   likely to continue to injure consumers, reap unjust enrichment, and harm the public's interest,

20   thus engendering a multiplicity of judicial proceedings.

21        **276.**    Plaintiff and the MovieTickets California Subclass request that this Court issue

22   preliminary and permanent injunctions against such acts and practices.  Additionally, Plaintiff

23   and the MovieTickets California Subclass seek the recovery of attorneys' fees and litigation

24   expenses pursuant to California Code of Civil Procedure section 1021.5, the substantial benefit

25   doctrine, the common fund doctrine or other authority requiring MovieTickets to pay Plaintiff's

26   attorneys' fees and litigation expenses.

27   / / /

28   / / /

**PRAYER FOR RELIEF**

Plaintiff and the Class pray for judgment against Defendants as follows:

**A.** An order certifying the Class and any appropriate subclasses and designating Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

**B.** That the Court preliminarily and permanently enjoin Defendants from engaging in the conduct alleged herein;

**C.** Other injunctive and declaratory relief as may be appropriate;

**D.** Restitution and disgorgement any ill-gotten profits from Defendants to the extent permitted by applicable law, together with interest thereon from the date of payment;

**E.** For statutory damages according to proof;

**F.** For general damages according to proof;

**G.** For special damages according to proof;

**H.** For exemplary or punitive damages;

**I.** A declaration that Defendants are financially responsible for notifying all Class members of the pendency of this action;

**J.** Reasonable costs and attorneys' fees;

**K.** Statutory pre-judgment interest; and

**L.** For such other relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class members, demand a jury trial in this action for all of the claims so triable.

Dated: June 22, 2010                                    STONEBARGER LAW, APC


By: _____
Gene J. Stonebarger, Esq.
Attorneys for Plaintiff and the Class

STONEBARGER LAW, APC
75 Iron Point Circle
Suite 145
Folsom, CA 95630

CLASS ACTION COMPLAINT

●JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**

**JUN 2 5 2010**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

## I. (a) PLAINTIFFS

PATRICK BERRY, on behalf of himself and all other similarly situated,

**DEFENDANTS**

WEBLOYALTY.COM, INC., a Delaware corporation;
MOVIETICKETS.COM, INC., a Delaware corporation

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Gene J. Stonebarger, SBN 209461, Stonebarger Law, APC
75 Iron Point Circle, Ste. 145, Folsom, CA  95630 (916) 235-7140

Attorneys (If Known)

**10CV 1358 H      CAB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL INJURY** | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 362 Personal Injury - Med. Malpractice | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 650 Airline Regs. | **LABOR** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 371 Truth in Lending | **LABOR** | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 550 Civil Rights | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 462 Naturalization Application | | |
| | | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | ☐ 465 Other Immigration Actions | | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 1693; 18 U.S.C. Section 2510    28:1331 ~TB

Brief description of cause:
Business Tort

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ TBD

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE                        DOCKET NUMBER

DATE  06/22/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  15005   AMOUNT $350 -   6|28|10 B4   APPLYING IFP        JUDGE        MAG. JUDGE

CR

ORIGINAL

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS015005
Cashier ID: bhartman
Transaction Date: 06/28/2010
Payer Name: STONEBARGER LAW
----------------------------------
CIVIL FILING FEE
  For: BERRY V WEBLOTALTY.COM
  Case/Party: D-CAS-3-10-CV-001358-001
  Amount:       $350.00
----------------------------------
CHECK
  Check/Money Order Num: 265
  Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```