1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

PATRICK BERRY, on behalf of himself
and all others similarly situated,

12

Plaintiff,

13

vs.

14

WEBLOYALTY.COM, INC., a Delaware
corporation; MOVIETICKETS.COM,
INC., a Delaware corporation; DOES 1
through 50 inclusive,

15
16

Defendants.

17

CASE NO. 10-CV-1358-H (CAB)

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS**

18        On January 18, 2011, Plaintiff filed his first amended complaint ("FAC") in this matter.

19   (Doc. No. 46.)  On February 17, 2011, Defendants Webloyalty.com, Inc. ("Webloyalty") and

20   MovieTickets.com, Inc. ("MovieTickets.com") filed their motion to dismiss the first amended

21   complaint.  (Doc. Nos. 48, 49.)  Along with the motion to dismiss, Defendants also filed a

22   request for judicial notice.  (Doc. No. 50.)   On March 21, 2011, Plaintiff Patrick Berry

23   ("Berry") filed his opposition to the motion, opposition to Defendants' request for judicial

24   notice, and his own request for judicial notice.  (Doc. No. 53.)  On April 4, 2011, Defendants

25   filed their reply to the motion to dismiss, their reply to their request for judicial notice, and

26   their opposition to Plaintiff's request for judicial notice.  (Doc. Nos. 57, 58.)  On April 11,

27   2011, the Court held a hearing on this matter.  James Patterson and Alisa Ann Martin appeared

28   on behalf of Plaintiff Berry.  James Prendergast and John Regan appeared on behalf of

Defendant Webloyalty. Carrie Anderson, Bruce Colbath, and Jaime Kaplan appeared on behalf of Defendant MovieTickets.com. After due consideration, the Court GRANTS Defendants' motion to dismiss for all claims.

## BACKGROUND

Plaintiff challenges the adequacy of enrollment into a membership program on the internet. (FAC ¶ 1.) On May 26, 2009, Plaintiff Berry purchased tickets from MovieTickets.com using his debit card. (FAC ¶ 48.) Berry alleges he saw an advertisement on the website to save $10.00 on his next purchase. (Id.) Berry clicked on the coupon and provided his email. (Id.) Plaintiff did not spend substantial time to read the text or other information provided in the pop-up window before he provided his email address and clicked the green button. (Id.) Berry started getting monthly charges of $12.00 per month as a member of this club. (Id. ¶ 53.) Berry alleges that the enrollment process was deceptive and misleading and he would not have entered into the program had to known the terms and conditions of the club. (Id. ¶¶ 50, 52.)

The Court previously issued an order granting in part and denying in part Defendant's first motion to dismiss the complaint. (Doc. No. 41.) In its order, the Court allowed Plaintiff 30 days to file an amended complaint also granted the parties limited discovery with respect to the issue of the enrollment page screenshots. (Id.) The parties conducted limited depositions of Plaintiff Berry, taken on January 11, 2011, and of Defendant witness Richard Winiarski, taken on January 7, 2011. (Doc. No. 49-2, Declaration of Daniel Esrick ("Esrick Decl."), Exs. 6-7.) Plaintiff filed his first amended complaint on January 18, 2011, and Defendants filed their motion to dismiss the amended complaint on February 17, 2011. (Doc. Nos. 46, 48, 49.)

## DISCUSSION

**I.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

**A.      Legal Standard**

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Navarro v. Black, 250 F.3d 729,

732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)). "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996); see also Twombly, 550 U.S. at 555. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.     Enrollment Page Disclosures**

After his online purchase at MovieTickets.com, Plaintiff Berry alleges that he clicked on a coupon offer presented to him. (FAC ¶ 48.) After clicking on the offer, Berry was presented with an enrollment page where he entered his email address and clicked on a green button. (Id.)

The enrollment page has a "Shopper Discounts and Rewards" logo at the top and does not display the MovieTickets.com logo anywhere. (See Esrick Decl. Ex. 1 Ex. A.)



The enrollment page contains several disclosures that detail the terms and conditions of accepting the coupon offer:

(1)

**Thank You...**
**Sign up to claim your rewards!**
Click YES below to get your $20.00 Cash Back Award if you sign up for all the Cash Back Rewards of Shopper Discounts & Rewards, the premier online savings service FREE for the next 30 days and only $12 per month thereafter billed to the credit card or deducted from the debit card you used at MovieTickets.com today.

Thank You . . .
Sign up to claim your rewards!
Click YES below to get your $20.00 Cash Back Award if you sign up for all Cash Back Rewards of Shopper Discounts & Rewards, the premier online savings service FREE for the next 30 days and only $12 per month thereafter billed to the credit card or deducted from the debit card you used at MovieTickets.com today.

(2)

**Member Care Guarantee**
• *Email reminder before first monthly charge*
• *Cancel anytime hassle-free, online or by phone*

Member Care Guarantee
- Email reminder before first monthly charge
- Cancel anytime hassle-free, online or by phone

(3)

So claim all your Shopper Discounts & Rewards benefits... plus get your $20.00 Cash Back Award! You'll get your $20.00 Cash Back Award and instructions on the next page so you can access the site and start saving today! Plus we'll send your Membership Kit email to you at your email address. Try all the benefits for the next 30 days FREE and see how much you save! There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only $12 a month and of course you have our Guarantee as described in the Offer and Billing Details! There's no limit to the amount of money you can save!

10cv1358

1  So claim all your Shopper Discounts & Rewards Benefits . . . plus get your
2  $20.00 Cash Back Award!  You'll get your $20.00 Cash Back Award and
   instructions on the next page so you can access the site and start saving today!
   Plus we'll send your Membership kit email to you at your email address.  Try
3  all the benefits free for the next 30 days FREE and see how much you save!
   There's no obligation to continue.  If you are completely satisfied, do nothing
4  and you'll enjoy ongoing savings for only $12 a month and of course you have
   our Guarantee as described in the Offer and Billing Details!  There is no limit
5  in the amount of money you can save!

6      (4)



30   DAYS   FREE
plus only $12 a month thereafter

12     (5)



**Offer and Billing Details:**
Sign up for Shopper Discounts & Rewards FREE for the next 30 days, with our compliments, and enjoy ongoing savings for only $12 a month thereafter. Get your $20.00 Cash Back Award on your next MovieTickets.com purchase, Cash Back Rewards at over 500 leading Web sites plus all the valuable benefits of Shopper

Offer and Billing Details:
Sign up for our Shopper Discounts & Rewards FREE for the next 30 days, with
our compliments, and enjoy ongoing savings for only $12 a month thereafter.
Get your $20.00 Cash Back Award on your next MovieTickets.com purchase,
Cash Back Rewards at over 500 leading Web sites plus all the valuable benefits
. . .

21     (6)



Enter your email address and click YES below to
sign up for Shopper Discounts & Rewards

By entering my email address as my electronic
signature and clicking YES, I have read and agree
to the Offer and Billing Details and authorize
MovieTickets.com to securely transfer my name,
address and credit or debit card information to
Shopper Discounts & Rewards for billing and
benefit processing.

Enter your email address and click YES below to sign up for Shopper Discounts & Rewards

By entering my email address as my electronic signature and clicking YES, I have read and agree to the Office and Billing Details and authorize MovieTickets.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing.

(7)

leading Web sites plus all the valuable benefits of Shopper Discounts & Rewards. It's a Special Reward! If you are 100% satisfied during your trial, do nothing. All your Shopper Discounts & Rewards discounts and protection will automatically continue for just $12 a month billed by Shopper Discounts & Rewards to the credit card or deducted from the debit card you used at MovieTickets.com today. For your convenience Shopper Discounts & Rewards will use the contact and credit or debit card information you provided to MovieTickets.com today for billing and benefit processing. In the event your monthly membership fee were to ever

It's a Special Reward! If you 100% satisfied during your trial, do nothing. All your Shopper Discounts & Rewards discounts and protection will continue for just $12 a month billed by Shopper Discounts & Rewards to the credit card or deducted from the debit card you used at MovieTickets.com today. For you convenience Shopper Discounts & Rewards will use the contact and credit or debit card information you provided to MovieTickets.com today for billing and benefit processing.

(Id.)

After scrolling to the bottom of the page, there are two spaces to the left to enter an email address twice and click on a large "YES" button to accept the offer. (Id.) Below the "YES" button is a link that says "No thanks, not right now." (Id.)

## C.  Fraud-Based Claims

### I.  9(b) Pleading Standards

Rule 9(b) requires that a person alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.3d 1393, 1400 (9th Cir. 1986)). In general, the complaint must state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Id. "[A]

1   plaintiff must set forth more than neutral facts necessary to identify the transaction. . . . In other

2   words, the plaintiff must set forth an explanation as to why the statement or omission

3   complained of was false or misleading." In re Glenfeld Sec. Litig., 42 F.3d 1541, 1548 (9th

4   Cir. 1994).  Consistent with its previous order on Defendants' motion to dismiss, the Court

5   applies this standard to the following causes of action that are grounded in fraud:  (1) negligent

6   misrepresentation, (2) fraudulent misrepresentation, (3) false advertising under Cal. Bus. &

7   Prof. Code § 17500, and (4) unfair competition under Cal. Bus. Prof. Code § 17200. (See Doc.

8   No. 41 at 8.)

9           **ii.**       **Negligent and Fraudulent Misrepresentation**

10   Plaintiff's eighth and ninth claims are for negligent misrepresentation against

11   Webloyalty and MovieTickets.com, respectively.  (FAC ¶¶ 127-145.)  Plaintiff's tenth and

12   eleventh claims are for fraudulent misrepresentation against Webloyalty and

13   MovieTickets.com. (Id. ¶¶ 146-169.)  Plaintiff alleges that Defendants represented that they

14   were going to receive a coupon and not membership into a savings club. (Id. ¶ 128.)  Plaintiff

15   further alleges that Defendants' enrollment process is deceptive and misleading and designed

16   to trick consumers into enrolling into the club.  (Id. ¶ 50.)

17   Under California law, "[t]he elements of intentional misrepresentation, or actual fraud,

18   are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2)

19   knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable

20   reliance; and (5) resulting damage.'" Anderson v. Deloitte & Touche, 56 Cal. App. 4th 1468,

21   1474 (Cal. Ct. App. 1997).  "The elements of negligent misrepresentation are '(1) the

22   misrepresentation of a past or existing material fact, (2) without reasonable ground for

23   believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented,

24   (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" Nat'l Union Fire

25   Ins. Co. v. Cambridge Integrated Servs. Group, Inc., 171 Cal. App. 4th 35, 50 (Cal. Ct. App.

26   2009) (citation omitted).

27   Defendants argue that Plaintiff Berry does not satisfy the heightened pleading

28   requirements under Rule 9(b).  (Doc. No. 48-1 at 7-8.)  Defendants contend that Berry's own

deposition testimony shows that he does not remember details on the enrollment page that he encountered.  (Id.)  In particular, Berry testified that he does not recall seeing the text on the enrollment page and does not remember what the text said.  (Id.; see Doc. No. 48-2, Declaration of Carrie Anderson ("Anderson Decl."), Ex. 1 at 11:14, 20:19-21.)  When asked what made Berry think he was getting a coupon in the email by entering his email twice and hitting the "YES" button on the enrollment page, Berry testified as follows:

> Q:   Was there some reason that you believed you'd receive the coupon in the email?
>
> A:   Is there some reason that I believed I would receive the coupon in an email?
>
> Q:   Yes.
>
> A:   Yeah, I believed by the enrollment page, that entering my email address would give me access to the coupon through my email.
>
> Q:   Was there any text on the page that you read that lead you to believe that the coupon would be emailed to you?
>
> A:   I do not know.

(Id. at 23:4-15.)  Additionally, Defendants argue that Plaintiff's allegations on omissions are insufficient because and Defendants made adequate disclosures on the enrollment page.  (Doc. No. 48-1 at 9-10.)  April 11, 2011

In opposition, Plaintiff argues that the disclosures on the enrollment page do not foreclose their allegations of misrepresentation.  (Doc. No. 53 at 10-14.)  Plaintiff contends that even truthful disclosures can still deceive a consumer.  (Id. at 11.)  Plaintiff argues that in order to decide whether a practice is deceptive or not, one must look at the net impression of the solicitation, viewed as a whole.  (Id.)

After due consideration of the arguments from all parties, the Court is more persuaded that the explicit and repeated disclosures that Defendants made in their enrollment page suffices to defeat the misrepresentation claims.  The disclosure immediately above the email entry boxes:

> Enter your email address and click YES below to sign up for Shopper Discounts & Rewards
>
> By entering my email address as my electronic signature and clicking YES, I have read

1
2

> and agree to the Office and Billing Details and authorize MovieTickets.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing.

3    is sufficient to place reasonable consumers on notice that they are entering into the Shopper

4    Discounts & Rewards club and that they are accepting the offer by clicking on the "YES"

5    button. (See Esrick Decl. Ex. 1 Ex. A.) In addition, enrollment page has five other disclosures

6    that informs the consumer that by choosing to join the club, the consumer will be charged $12

7    a month after an initial free thirty-day trial. (See id.) The enrollment page also discloses three

8    times that if the consumer chooses to enroll in the club, the consumer's credit or debit card

9    information would be transferred from MovieTickets.com to Webloyalty and would be charged

10   the monthly charge. (See id.) The enrollment page further tells the consumer that he will get

11   an email reminder before the first monthly charge and that he can cancel anytime by phone or

12   online. (Id.) Such disclosures are sufficient to place the consumer on notice of the conditions

13   and terms of the club. See In re Vistaprint, 2009 WL 2884727, at *5-6 (S.D. Tex. Aug. 31,

14   2009) ("A consumer cannot decline to read clear and easily understandable terms that are

15   provided on the same webpage in close proximity to the location where the consumer indicates

16   his agreement to those terms that then claim that the webpage, which the consumer has failed

17   to read, is deceptive."); Baxter, No. CV-09-1031, 2010 WL 3791487, at *4 (C.D. Cal. Sept.

18   16, 2010) ("A customer who accepts is bound by the terms of a disclosure even if he or she

19   chooses not to read it."); Hook, No. 10-CV-239, 2011 WL 1196305, at *10 (M.D. Ga. Mar.

20   28, 2011).

21        Plaintiff cites Keithly v. Intelius, Inc., No. 09-1485, 2011 U.S. Dist. LEXIS 16861

22   (W.D. Wa. Feb. 8, 2011), as support that in some cases, such truthful disclosures may still be

23   misleading. However, as Defendants' explain, the screenshot considered in Keithly may be

24   more misleading based on its content. First, in order to reach the enrollment page in Keithly,

25   the consumer is taking there after clicking on a button that says "Confirm the Purchase and

26   Show my Report" instead of this case where Plaintiff Berry took a voluntary step to click on

27   the coupon offer. (Doc. No. 57 at 4.) Second, there were not as many disclosures in Keithly

28   in close proximity to the offer graphics. (Id. at 4-5.) Finally, in Keithly, the only text above

the box where the consumer enters his email is "Please type in your email address below." (Id. at 5.)  In contrast, the text above the email entry states "[b]y entering my email address as my electronic signature and clicking YES, I have read and agree to the Office and Billing Details and authorize MovieTickets.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing." See Esrick Decl. Ex. 1 Ex. A.)  A substantially similar disclosure was found in Baxter, where the Court held as a matter of law that the enrollment process was not deceptive.  See Baxter, 2010 WL 3791487 at *4 ("Above the email entry box, the webpage states 'By typing your email address below, that will constitute your electronic signature and is your written authorization to charge/debit your account according to the Offer Details to the right.'").

After the disclosures were presented to him, Plaintiff Berry took three affirmative steps to accept the terms of the club membership—he entered his email twice and clicked the "YES" button.  Right below the yes button, he could have clicked "No thanks" to refuse membership. See Baxter, 2010 WL 3791487 at *4 ("The disclosures combined with affirmative steps for acceptance are sufficient that, as a matter of law, the webpage is not deceptive.").  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's misrepresentation claims.

### iii.    Unfair Competition and False Advertising Claims

Plaintiff's twelfth and thirteenth claims are for False Advertising ("FAL") under Cal. Bus. & Prof. Code § 17500, et. seq. against Webloyalty and MovieTickets.com, respectively. (FAC ¶¶ 170-181.)  Plaintiff alleges that Defendants' acts, practices, and misrepresentations amount to false advertising that is likely to mislead.  (Id. ¶¶ 172-173.)  Plaintiff's sixteenth and seventeenth claims are for unfair competition ("UCL") under Cal. Bus. & Prof. Code § 1720, et. seq., against Webloyalty and MovieTickets.com, respectively.  (Id. ¶¶ 196-218.)  Plaintiff alleges that Defendants' practices are unlawful, unfair, and fraudulent.  (Id. ¶¶ 198-200.)

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code §17200. California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising."  Id. §

17500. Under these California statutes, conduct is deceptive or misleading if it is likely to deceive an ordinary consumer. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). In addition, in order to assert a claim under the UCL or FAL, a person must have "suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§ 17204 & 17535. Therefore, actual reliance is required to have standing to sue under the UCL or FAL. Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 322 (2011); In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009).

Plaintiff bases his unlawful violation prong of the UCL on the other violations from his other claims—including the EFTA, EPCA, and FAL violations. "An action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." Farmers Ins. Exchange v. Superior Ct., 2 Cal. 4th 377, 383 (1992) (quotations and citations omitted). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994). However, as discussed elsewhere in this Order, the Court concludes that the other claims fail. Accordingly, because no statutory violation remains, the Court dismisses Plaintiff's claim under the unlawful prong of the UCL.

Plaintiff bases his unfair prong on of the UCL on allegations that injury to Plaintiff greatly outweighs any benefit to consumers. (FAC ¶ 200.) In the context of cases involving consumers, California courts have not clearly articulated a single definition of an unfair business practice. See Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735 (9th Cir. 2007). In Lozano, the Ninth Circuit explained that California courts define an unfair business practice as either a practice that undermines a legislatively declared policy or threatens competition, or a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer. Id. at 736; see Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 186-87 (1999); South Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999). The Court concludes that the FAC fails to sufficiently plead this cause of action under either definition. Plaintiff's

FAC only contains insufficient cursory allegations.  See Twombly, 550 U.S. at 555.

Finally, Plaintiff bases the fraudulent prong of the UCL and his FAL claims on alleged misrepresentations and omissions on Defendant's website when signing Plaintiff Berry up for the savings club.  (FAC ¶¶ 44, 172, 199.)  The Court concludes—as it did above on the misrepresentations claims—that Defendants' enrollment webpage provided sufficient disclosures as to not constitute misrepresentation as a matter of law.  The enrollment page has five disclosures that informs the consumer that by choosing to join the club, the consumer will be charged $12 a month after an initial free thirty-day trial.  (See Esrick Decl. Ex. 1 Ex. A.) The enrollment page also discloses three times that if the consumer chooses to enroll in the club, the consumer's credit or debit card information would be transferred from MovieTickets.com to Webloyalty and would be charged the monthly charge.  (See id.)  Such disclosures are sufficient to place the consumer on notice of the conditions and terms of the club. See In re Vistaprint, 2009 WL 2884727, at *5-6; Baxter, 2010 WL 3791487 at *4; Hook, No. 10-CV-239, 2011 WL 1196305, at *10.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's UCL and FAL claims.

**D.    Other Claims**

      **I.    Electronic Funds Transfer Act ("EFTA")**

Plaintiff's first claim is for violation of the Electronic Funds Transfer Act ("EFTA") pursuant to 15 U.S.C. § 1693.  (FAC ¶¶ 66-76.)  Under the EFTA, a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made."  15 U.S.C. § 1693e(a).  Under E-Sign, an electronic signature can be "[1] an electronic sound, symbol, or process, [2] attached to or logically associated with a contract or other record and [3] executed or adopted by a person with the intent to sign the record."  15 U.S.C. § 7006(5).  The Federal Reserve interpreted this to mean that the authorization is only valid if it is "readily identifiable as such and the terms of the preauthorization are clear and readily understandable."  See 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 6.  Defendant Webloyalty argues that there was no

unauthorized electronic transfer because the membership club enrollment process that Plaintiff followed satisfies the requirements. (Doc. No. 49-1 at 17-20.)

The Court agrees with Defendants. First, Webloyalty contends that the Plaintiff Berry's email signature satisfied authorization. In particular, Plaintiff Berry entered his email twice and clicked "YES" button. (See Esrick Decl. Ex. 1 Ex. A.) The following disclosure exists above the email entry boxes:

> Enter your email address and click YES below to sign up for Shopper Discounts & Rewards
>
> By entering my email address as my electronic signature and clicking YES, I have read and agree to the Office and Billing Details and authorize MovieTickets.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing.

(Id.) The authorization under such disclosures is "clear and readily understandable." The Court concludes that Plaintiff Berry's entry of his email address twice and clicking on "YES" constitutes authorization given the various disclosures made on the enrollment page. See In re Vistaprint, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31, 2009) (dismissing the EFTA claim because "Plaintiffs typed their email addresses into the spaces provided on Defendants' webpages, thereby authorizing Defendants to 'charge/debit their account according to the offer details.'") Furthermore, Webloyalty argues that it provided Plaintiff Berry with confirmation of the authorization through the on-screen acknowledgment page and sending him the join email. (Doc. No. 49-1 at 20.) Both the acknowledgment and join email reiterated Plaintiff Berry's membership in the program, the terms and conditions of the program, and that $12 would be charged to the credit/debit card entered. (See Pipkin Decl. Exs. A-B.)

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's EFTA claim.[1]

## ii. Electronic Communications Privacy Act ("EPCA")

Plaintiff's second claim is for violation of the Electronic Communications Privacy Act

---

[1]Plaintiff also contends that the Court already allowed its EFTA claim to proceed in the first motion to dismiss. (Doc. No. 53 at 17.) However, at the time of that ruling, the limited discovery the Court ordered regarding the authenticity of the enrollment pages had not been conducted. In light of the Court taking judicial notice of the enrollment pages post-discovery, the Court is not bound by its original motion to dismiss order.

(EPCA) pursuant to 18 U.S.C. § 2510. (FAC ¶¶ 77-83.) The EPCA imposes liability on individuals who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Defendant Webloyalty argues that there was no "interception" because they only receive the billing information from MovieTickets.com after Plaintiff Berry's authorization. (Doc. No. 49 at 20-21.) Defendants further argue that even if there was an interception, there is still no violation because Plaintiff gave consent for MovieTickets.com to transfer the information to Webloyalty. (Id.)

The Court concludes that Plaintiff Berry's entry of his email address twice and clicking on "YES" constitutes authorization given the several disclosures made on the enrollment page. Through this authorization, Plaintiff Berry "agree[d] to the Office and Billing Details and authorize[d] MovieTickets.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing." Accordingly, there is no interception under the EPCA. See In re Vistaprint, 2009 WL 2884727, at *9. The Court GRANTS Defendants' motion to dismiss Plaintiff's EPCA claim.

### iii. Civil Theft

Plaintiff's third claim is for civil theft under Connecticut General Statute § 52-564 and § 53(a)-119(2). (FAC ¶¶ 84-93.) "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Gen. Stat. § 52-564. "Any person who obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person." Conn. Gen. Stat. § 53(a)-119(2).

The Court concludes that Plaintiff Berry's entry of his email address twice and clicking on "YES" constitutes authorization given the disclosures made on the enrollment page. Because Plaintiff Berry gave his authorization to be enrolled in the club, no property was obtained under "false pretenses" with the intent to defraud. Accordingly, the Court GRANTS the motion to dismiss the civil theft claim.

///

iv.    **Unjust Enrichment**

Plaintiff's fourth and fifth claims are for unjust enrichment against Webloyalty and MovieTickets.com, respectively. (FAC ¶¶ 94-115.)  "Unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the fights of the parties."  Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996), California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc., 94 Cal. App. 4th 151, 125 (Cal. App. 4th 2001).  A claim for unjust enrichment requires pleading the "receipt of a benefit and the unjust retention of the benefit at the expense of another."  Lectrodryer v. Seoulbank, 77 Cal. App. 4th 723, 726 (2000).  "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor."  Dinosaur Dev., Inc. v. White, 216 Cal. App. 3d 1310, 1315 (1989).  Ordinarily, a plaintiff must show that a benefit was conferred on the defendant through mistake, fraud, coercion, or request.  Nebbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App. 3d 1415, 1422 (1988).

Defendants argue that an unjust enrichment action cannot lie because a contract governs the relationship between the parties. (Doc. No. 49-1 at 22.)  Specifically, Plaintiff Berry and Defendants entered into a contract when Berry accepted the offer and enrolled in the club. (Id.)  Furthermore, Defendants argue that they did not retain anything that belongs to Plaintiff Berry because it refunded all the fees that Berry paid to them.  (Id. at 21-22.)

The Court agrees with Defendants.  Berry enrolled into Webloyalty's savings club and authorized the charges to his debit card.  Accordingly, the Court GRANTS Defendants' motion to dismiss the unjust enrichment claims.

v.    **Money Had and Received**

Plaintiff's sixth and seventh claims are for money had and received against Webloyalty and MovieTickets.com, respectively.  (FAC ¶¶ 116-26.)  "The count for money had and received states in substance that the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'"  4 Witkin, Cal. Proc. (5th ed. 2008) Pleading, § 561, p. 688.  "The foundation of an action for conversion on a

- 16 -

money had and received count is the unjust enrichment of the wrongdoer, and in order for plaintiff to recover in such action she must show that a definite sum, to which she is justly entitled, has been received by defendant." <u>Bastanchury v. Times-Mirror Co.</u>, 68 Cal. App.2d 217, 236 (Ct. App. 1945). It is fatal for this cause of action if the amount is not ascertainable. <u>French v. Robbins</u>, 172 Cal. 670, 679 (1916).

Defendants first argue that no action can lie because there was an express contract that covers the enrollment into the savings club. (Doc. No. 49-1 at 23.) Defendants further argue that Plaintiff cannot show that any of Plaintiff's Berry's money was unfairly retained given the disclosures on the enrollment page. (<u>Id.</u>)

The Court concludes that Berry enrolled into Webloyalty's savings club and authorized the charges to his debit card. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's money had and received claims.

### vi.   Conversion

Plaintiff's fourteenth and fifteenth claims are for conversion against Webloyalty and MovieTickets.com, respectively. (FAC ¶¶ 182-95.) Conversion is the wrongful exercise of dominion over personal property of another. <u>Moore v. Regents of Univ. of Calif.</u>, 51 Cal. 3d 120, 136 (1990). Generally, conversion requires the wrongful interference with tangible property. Conversion can lie, however, when intangibles that are represented by documents, such as bonds, stock, checks. 5 Witkin, Summary of Cal. Law, Torts § 702. Money also cannot be the subject of conversion unless there is a specific, identifiable sum identified. <u>Vu v. California Commerce Club</u>, 58 Cal. App. 4th 229, 235 (Cal. App. 2d 1997).

Defendants argue that Plaintiff consented to enroll in the program. (Doc. No. 49-1 at 24.) The Court agrees. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' conversion claims.

### vii.   Invasion of Privacy

Plaintiff's eighteenth claim is for invasion of privacy and intrusion into private matters. (FAC ¶¶ 219-225.) Plaintiff alleges that he had a reasonable expectation of privacy that their payment and billing information would be kept private from Webloyalty when they entered

1    into interactions with MovieTickets.com. (Id. ¶ 221.) Plaintiff further alleges that his consent

2    was not obtained before this private information was shared. (Id. ¶ 222.) Plaintiff's nineteenth

3    cause of action is for invasion of the constitutionally protected right to privacy. (FAC ¶¶ 226-

4    234.) This claim is also based on Plaintiff having a reasonable expectation of privacy in his

5    personal billing information. (Id. ¶¶ 228-29.)

6          In order to state a claim for common law privacy, Plaintiff must allege the following:

7    "First, the defendant must intentionally intrude into a place, conversation, or matter as to which

8    the plaintiff had a reasonable expectation of privacy. Second, the intrusion must occur in a

9    manner highly offensive to a reasonable person." Hernandez v. Hillsides, Inc., 47 Cal. 4th 272,

10   286 (Cal. App. 2009); see also Taus v. Loftus, 20 Cal. 4th 683, 725 (2007). In order to state

11   a California constitutional privacy claim, Plaintiff must allege the following: First, the plaintiff

12   must establish a legally protected privacy interest. Hill v. National Collegiate Athletic Ass'n,

13   7 Cal. 4th 1, 39-40 (1994). Second, the plaintiff must establish a reasonable expectation of

14   privacy in the circumstances. Id. Finally, the plaintiff must establish conduct that constitutes

15   a serious invasion of privacy. Id.

16         Defendants argue that Plaintiff has failed to show that he has a reasonable expectation

17   of privacy because he consented to his personal billing information being transferred from

18   MovieTickets.com to Webloyalty. (Doc. No. 48-1 at 21.) Furthermore, Defendants argue that

19   Plaintiff has not alleged an intentional intrusion or highly offensive conduct. (Id. 20, 22.)

20         The Court agrees with Defendants. The Court concludes that Plaintiff Berry's entry of

21   his email address twice and clicking on "YES" constitutes authorization given the various

22   disclosures made on the enrollment page. The enrollment page stated explicitly that "[b]y

23   entering my email address as my electronic signature and clicking YES, I have read and agree

24   to the Office and Billing Details and authorize MovieTickets.com to securely transfer my

25   name, address and credit or debit card information to Shopper Discounts & Rewards for billing

26   and benefit processing." (Esrick Decl. Ex. 1 Ex. A.) Thus, there is no reasonable expectation

27   of privacy in this situation where Plaintiff consented to have his billing information shared by

28   MovieTickets.com with Webloyalty. See  Hernandez, 47 Cal. 4th at  286; Hill, 7 Cal. 4th at

39-40. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's invasion of privacy claims.

### viii. Negligence

Plaintiff's final cause of action is for negligence. (FAC ¶¶ 235-241.) In particular, Plaintiff alleges that MovieTickets.com negligently shared with Webloyalty or allowed Webloyalty to intercept Plaintiff's billing information, that Webloyalty negligently accepted Plaintiff's billing information, and Defendants utilized misleading and deceptive webpages to gain membership into the savings club. (FAC ¶¶ 236-238.)

In order to state a claim for common law negligence, Plaintiff must allege the following: (1) existence of a duty of care from the defendant to the plaintiff; (2) the defendant breach the duty; (3) the defendant's breach was the cause of the injury to the plaintiff; and (4) the plaintiff suffered damage. Ladd v. County of San Mateo, 12 Cal. 4th 913, 917-18 (1996).

While Plaintiff presents his allegations under the negligence label, Plaintiff's allegations are substantially the same as his allegations under negligent misrepresentations, which the Court previously discussed above. Defendants argue that the claims fail in light of the conspicuous and prominent disclosures on the enrollment page. (Doc. No. 48-1 at 23-24.) The Court agrees. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's negligence claim.

## II. Judicial Notice

Defendants and Plaintiff request that the Court take judicial notice of documents extraneous to the FAC. Defendants request that the Court take judicial notice of the following:

(1) screenshots of the Shopper Discounts & Rewards Club enrollment page associated with Plaintiff Berry's account; (Esrick Decl. Ex. 1)

(2) copy of the acknowledgment webpage that customers are directed to immediately after completing the enrollment page; (Doc. No. 49-10, Affidavit of Meghan Pipkin ("Pipkin Aff."), Ex. A)

(3) copy of email sent to Plaintiff Berry on the day of enrollment confirming the terms and conditions of the club; (Pipkin Aff. Ex. B)

(4) Plaintiff Berry's Account History with Webloyalty; (Esrick Decl. Ex. 1 Ex. E)

(5) the enrollment pages in Ferrington v. McAfee, Inc., No. 10-CV-1455-LHK, 2010 WL 3210169 (N.D. Cal. Oct. 5, 2010) and in Baxter v. Intelius, No. CV-

1    09-1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010);  (Esrick Decl. Exs. 2-5)

2        (6)    deposition transcripts of Berry and Winiarski. (Esrick Decl. Exs. 6-7)

3    (Doc. No. 50-1.)  Plaintiff requests that the Court take judicial notice of two Senate Reports

4    on *Aggressive Sales Tactics on the Internet* and the <u>Restore Online Shoppers' Confidence Act</u>,

5    D 3386, signed into law on December 29, 2010.  (Doc. No. 53-2.)

6    **A.    Legal Standard**

7        "Generally, a district court may not consider any material beyond the pleadings in ruling

8    on a Rule 12(b)(6) motion." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542,

9    1555 n.19 (9th Cir. 1990).  The court may, however, consider the contents of documents

10   specifically referred to and incorporated into the complaint.  <u>Branch v. Tunnell</u>, 14 F.3d 449,

11   454 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307

12   F.3d 1119, 1127 (9th Cir. 2002).  The rule prevents "plaintiffs from surviving a Rule 12(b)(6)

13   motion by deliberately omitting . . . documents upon which their claims are based." <u>Schwarz</u>

14   <u>v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007) (internal citations omitted).  This rule is

15   limited to a document "whose authenticity no party questions."    <u>Id.</u> 14 F.3d at 453.

16   Additionally, the court may take judicial notice of facts that are "beyond reasonable

17   controversy." <u>Rivera v. Phillip Morris, Inc.</u>, 395 F.3d 1142, 1151 (9th Cir. 2005).  A court

18   cannot take judicial notice of a fact that is subject to reasonable dispute even if it is in the

19   public record.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

20   **B.    Enrollment Page Screenshots**

21       In its previous September 27, 2010 motion to dismiss, Defendants requested the Court

22   take judicial notice of the enrollment webpage for the savings club to support their contention

23   that Plaintiff Berry consented to the enrollment. (Doc. No. 19.)  Plaintiff moved to strike these

24   exhibits and raised questions as to the accuracy, authenticity, and completeness of the

25   screenshots. (Doc. No. 27.)  The Court denied the request for judicial notice on the ground that

26   there was sufficient dispute such that judicial notice of the webpage screenshot was

27   inappropriate at that time in the context of a motion to dismiss. (Doc. No. 41.)  The Court

28   however noted that apparent accuracy of the screenshot and granted the parties limited

1    discovery with respect to the enrollment page screenshots to give Plaintiff a chance to

2    challenge the authenticity of the screenshots. (Id. at 4-5.)

3        Defendants renew their request for judicial notice on the grounds that the screenshots

4    are directly linked to Plaintiff Berry's account through a unique campaign id number, CPID

5    109079. (Doc. No. 50-1 at 5-6, Esrick Decl. Ex. 1 ¶ 3, 7.) Winiarski, a Vice President of

6    Marketing for Defendant Webloyalty, testified that Plaintiff Berry signed up for the club

7    through this unique identifier and he is able to retrieve the enrollment page associated with

8    the unique identifier. (Id. Ex. 1 ¶ 3.) In particular, at the bottom of the enrollment page, there

9    is text indicating the CPID associated with the enrollment page. (Id. Ex.1 Ex. A.) Defendants

10   took the deposition of Plaintiff Berry and questioned him on whether the enrollment page

11   screenshot was the page he saw. (Id. Ex. 7.) Berry does not dispute that he viewed a webpage

12   that included some disclosures about the Shopper Discounts & Rewards program. (Doc. No.

13   53-1 at 4-5.) His deposition reveals only that he cannot recall what the disclosures were:

14       Q:    Well let me ask. Did you read any part of the page in May of 2009?

15       A:    I'm sure I read the part that says, "Enter your email address here and verify
16             email," like I mentioned before, but I just don't recall seeing any of the other
               stuff, so I probably didn't.

17       Q:    Do you recall if there was other text on the page other than the request to enter
               your email?
18
19       A:    Not specifically, no.

20       . . .

21       Q:    Was there other text on the page?

22       A:    I don't recall seeing other text, but I'm not saying there was no other text. I just
               don't recall anything else there.

23       Q:    Whether there was or not, do you recall whether you read other text?

24       A:    I recall I did not ready any other text.

25   (Esrick Decl. Ex. 7 at 20.) Defendants argue that based on the evidence, there is no reasonable

26   dispute as to whether the enrollment page offered was the actual page Berry saw. (Doc. No.

27   57-1 at 1-2.) Plaintiff opposes the request for judicial notice on the grounds that the screenshot

28   does not demonstrate the entire enrollment process. (Doc. No. 53-1 at 3-4.) Plaintiff further

1  argues that the printout does not show what the page looked like on the computer screen. (Id.

2  at 4.)

3         The Court agrees with Defendants. The enrollment page is central to Plaintiff Berry's

4  claims that he was deceived into enrolling into the club. Plaintiff Berry's account is associated

5  with a unique campaign identifier and this identifier is associated with the enrollment page.

6  Furthermore, even after the limited discovery the Court previously ordered, Plaintiff Berry is

7  unable to refute that the screenshot was the enrollment page that he saw. The Court concludes

8  that there is no reasonable dispute as to the accuracy of the screenshots. See Rivera, 395 F.3d

9  at 1151. Accordingly, the Court takes judicial notice of the screenshots presented by

10 Defendants of the enrollment page. See Hook v. Intelius, No. 10-CV-239, 2011 WL 1196305,

11 at *2-5 (M.D. Ga. Mar. 28, 2011) (allowing limited discovery on the issue of authenticity of

12 screenshots and taking judicial notice of the screenshots after concluding no reasonable dispute

13 remained as to their authenticity); Keithly v. Intelius, No. 09-1485, 1022 U.S. Dist. LEXIS

14 16861, at *5-7 (W.D. Wa. Feb. 8, 2011); Baxter v. Intelius, No. CV-09-1031, 2010 WL

15 3791487 (C.D. Cal. Sept. 16, 2010) ("While a printed page looks different from a computer

16 screen—for example, one can usually view an entire printed page but a webpage may require

17 scrolling, and a computer screen is lit but a piece of paper is matte—the substance of the words

18 and the nature of the layout are the same in either medium.").

19 **C.     Acknowledge Page, Confirmation Email, and Account History**

20        Defendants also request the Court to take judicial notice of an acknowledgment page,

21 a confirmation email sent to Plaintiff Berry after he joined the club, and Plaintiff Berry's

22 account history with the club. (Doc. No. 50-1 at 6-7.) Defendants argue that judicial notice

23 is appropriate under incorporation by reference because the acknowledgment page and join

24 email show that they provided Berry with a copy of authorization—in direct contradiction of

25 Plaintiff Berry's claim that they did not, in violation of the Electronic Funds Transfer Act

26 ("EFTA"). (Id. at 6.) Further, Defendants argue that the account history should also be

27 incorporated by reference because its shows charges and details of communication with

28 Plaintiff Berry. (Id. at 7.) Defendants also contend that Berry himself relies on the account

1   history in order to show that the charges to his debit card. (Id.) In opposition, Plaintiff

2   contends that they have not had an opportunity to confirm the authenticity of these documents.

3   (Doc. No. 53-1 at 5-6.)

4          The Court concludes that these documents are appropriate for judicial notice. Plaintiffs

5   do not affirmatively argue that the documents are inaccurate, but only that they have not had

6   the chance to conduct discovery on the documents. Defendants, on the other hand, have

7   provided affidavits to show the authenticity of the documents. Winiarski testified that after

8   a customer enrolls in the club, the customer is immediately directed to an acknowledgment

9   page and sent a join email. (Esrick Decl. Ex. 6 at 10-11.) Meghan L. Pipkin, a Senior Director

10  of Client Services and Operations for Webloyalty, also testified that the acknowledgment page

11  and join email were the exact emails sent to Plaintiff Berry. (Doc. No. 49-10, Declaration of

12  Meghan Pipkin ("Pipkin Decl."), ¶¶ 3-4.) The acknowledgment page and the join email each

13  show the CPID 109079 which uniquely identifies them. (See id. Exs. A-B.) Accordingly, the

14  Court takes judicial notice of these documents.

15  **D.    Enrollment Pages from Other Cases**

16         Further, Defendants request judicial notice the enrollment webpage screenshots from

17  two other cases that are cited by Plaintiff in its opposition to the motion to dismiss, Ferrington

18  v. McAfee, Inc., No. 10-CV-1455-LHK, 2010 WL 3210169 (N.D. Cal. Oct. 5, 2010) and

19  Baxter v. Intelius, No. CV-09-1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010). (Doc. No.

20  50-1 at 7-8.) Defendant contends that these are subject to judicial notice because the are

21  publicly available documents. The Court agrees. The screenshots from the two cases are

22  available on their public Case Management/Electronic Case Filing dockets. (See Doc. No. 50-

23  1 at 8 n.9.) Accordingly, the Court takes judicial notice of the enrollment pages from these two

24  cases.

25  **E.    Deposition Testimony**

26         Defendants finally request judicial notice of the deposition testimony of Richard

27  Winiarski and Plaintiff Berry. (Doc. No. 50-1 at 8-9.) Defendants contend that the depositions

28  were taken specifically for the authentication of the enrollment page screenshots and the

1  authenticity of the deposition testimony is not reasonably in dispute. (Id.) Plaintiff does not

2  object to the request. (See Doc. No. 53-1.) Accordingly, the Court takes judicial notice of the

3  deposition testimony.

4  **F.     Committee Reports**

5      Plaintiff requested the Court take judicial notice of three documents: (1) United States

6  Committee on Commerce, Science and Transportation's Report on Aggressive Sales Tactics

7  on the Internet and Their Impact on American Consumers, dated November 17, 2009, and (2)

8  United States Committee on Commerce, Science, and Transportation's Supplemental Report

9  on Aggressive Sales Tactics on the Internet, dated May 19, 2010 and (3) the ROSCA Act that

10  resulted from the reports, D 3386, signed into law on December 29, 2010. (Doc. No. 53-2.)

11  Defendants objected, arguing that the documents are irrelevant to Plaintiff Berry's specific

12  experience and the documents contain statements that are not adjudicative facts under Federal

13  Rule of Evidence 201. (Doc. No. 57-2.)

14      As to the two Senate reports, the Court previously on the last motion to dismiss took

15  judicial notice of the fact that the Committee has issued reports on aggressive sales tactics but

16  declined to take judicial notice of the statements within the document as the statements are

17  disputed. Accordingly, the Court takes judicial notice of the existence of the reports, but not

18  their findings and contents. See Lee, 250 F.3d at 689. As to ROSCA, the Court takes judicial

19  notice of the Act as it is part of the public record. However, the Court also concludes that the

20  congressional statements issued with ROSCA are subject to dispute and not appropriate for

21  judicial notice. See id.

22                                    **Conclusion**

23      After due consideration, the Court GRANTS Defendants Webloyalty and

24  MovieTickets.com's motion to dismiss on all claims.

25      **IT IS SO ORDERED.**

26  DATED: April 11, 2011

27

28                                    MARILYN L. HUFF, District Judge
                                      UNITED STATES DISTRICT COURT